ROCHEZ BROS. INC., a Pennsylvania Corporation, Plaintiff,

v.

Charles R. RHOADES et al., Defendants.

Civ. A. No. 68–1048.

United States District Court, W. D. Pennsylvania.

Sept. 25, 1974.

Ralph H. German, Pittsburgh, Pa., for plaintiff.

W. Gregory Kerr, Jr., Edmund S. Ruffin, III, Pittsburgh, Pa., for defendants.

## OPINION

DUMBAULD, District Judge.

The facts in this case are fully set forth in our former opinion, Rochez Bros. Inc. v. Rhoades, 353 F.Supp. 795 (W.D.Pa.1973). It is sufficient here to say that we held that a violation of Rule 10b–5 of the Securities and Exchange Commission by defendant occurred by reason of his failure to disclose to plaintiff information reasonably affecting the value of the stock purchased

by defendant from plaintiff. (*Ibid.*, at 803). This ruling was affirmed in Rochez Bros. Inc. v. Rhoades, 491 F.2d 402, 411. (C.A. 3, 1974).

With respect to the measure of damages, however, the majority of the panel (Judges van Dusen and Adams; Judge Hastie dissenting) held that "the district court erred when it refused to compute Rochez's damages on the basis of the value Rhoades received for the MS&R stock from Esterline. The proper measure of damages is the difference between the value of 50% of MS&R stock on the basis of the Esterline purchase price and the amount Rochez received from Rhoades for his share of MS&R." (*Ibid.*, at 412) [1] At the same time the majority of the panel remanded for findings of fact in accordance with Rules 41(b) and 52(a), F.R.Civ.P. to support the dismissal of the corporate defendant MS&R (*Ibid.*, at 413).

Actually, this Court's order of dismissal with respect to MS&R was not conceived as an exercise of the function "as trier of the facts" to "determine them", as contemplated in Rule 41(b), but simply as the equivalent of a ruling in a jury case as a matter of law that there was insufficient evidence to go to the jury with respect to that defendant. See Tr. 1372–75, 1383–91, 1982–89.

Pursuant to remand, after the pleasure of further hearing the able counsel involved in the case, we proceed to consideration of the points now presented, including plaintiff's new argument under § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), which was first presented to the Court of Appeals and is outlined in the majority opinion (491 F.2d at 413, and note 20). It was fully briefed and argued at the hearing upon remand.

The first matter for disposition is the amount of damages. Plaintiff wishes to reopen the testimony for the purpose of offering the views of an expert witness as to the proper discount factor to take account of the restrictions on marketability to which the Esterline stock received by defendant was subject. Defendant opposes reopening the record, and also stoutly reiterates that the present record contains no adequate proof permitting computation of this item of damages. Hence defendant concludes that plaintiff, having made its bed, must lie in it.

■ We agree that ordinarily when testimony is completed, the case must be disposed of upon the record as made, not upon a better record which might have been made. Crowded calendars make it unwise judicial economy to luxuriate in further hearings which might permit more precise and accurate determination of damages.

■ Defendant rightly points out that the appellate court's mode of measuring damages did not come as a surprise to plaintiff. In fact all through the trial plaintiff urged that the Esterline offer, rather than the Simmonds offer, should be taken as the yardstick for measuring the damages. Hence we must assume that in the record as already made plaintiff's counsel has presented data which in his professional judgment are adequate for determination of the damages sustained.

Under these circumstances we examine the opinion of the appellate court for guidance. We find therein no direction that additional evidence be taken. We find no criticism in that opinion of the mode of calculation (by a statistically arbitrary figure, such as the "standard deduction" in income tax practice, designed to ascertain the approximate quantification of an admittedly existing but not precisely measurable item) used by the District Court.[2] The defect in the District Court's determination was not in the method used, or the inadequacy of the evidence to support it, but simply that Simmonds stock instead of Esterline stock was thus evaluated.

---

1. This measure of damages was thought to be required by Affiliated Ute Citizens v. U. S., 406 U.S. 128, 155, 92 S.Ct. 1456, 31 L. Ed.2d 714 (1972), a case arising out of distribution of tribal property of the nation's Indian wards.

2. See 353 F.Supp. at 806.

We therefore deny plaintiff's request to reopen, and proceed to determine the amount of damages in the light of the present record.

■ As stated in Plaintiff's Brief (ordered to be filed of record) "the judgment against Rhoades should be in the amount of $2,125,000.00 (one-half of the $4,250,000.00 [cash paid by Esterline]), less $598,000.00 (the sale price from Rochez to Rhoades), or $1,527,–000.00 plus the value of 25,000 shares of Esterline restricted stock plus interest from July 23, 1968, the date of closing . . . PX 36 shows the market value of Esterline . . . as $53½ bid and $54½ asked . . . . PX 22 sets forth the restrictions" affecting the 50,000 shares received by Rhoades. (Pages 2–4 of Brief). The restrictions prohibit sale for one year (and thereafter unless Esterline registers the stock or its counsel holds that registration is not required by law). After three years Rhoades could request Esterline to make efforts to effect registration, but only once and then at a time when Esterline would not have to prepare additional financial statements for that purpose. Taking the mean market value at $54 per share, and allowing an arbitrary factor for lack of ready marketability, we find that $1,000,000.00 is a proper value for the Esterline stock. Total damages are therefore $3,125,000.00 with interest at 6 per cent from July 23, 1968, and judgment is entered in that amount against defendant.

■ Turning to the liability *vel non* of MS&R, the Court remains of the view that no sufficient evidence appears in the record to establish liability of this corporate defendant. At the time of the original ruling, the only activity where corporate facilities or employees were used by Rhoades in the scope of their duties was when the computer operator or other clerical people prepared forecasts embodying various assumptions furnished by Rhoades. As counsel have pointed out, however, these forecasts were not relied upon by plaintiff in the course of business nor by the Court in determining defendant's violation of Rule 10b–5. (See 353 F.Supp. at 802). Conceding that under Nuremburg Trials principles, the orders of superior officers are not necessarily an excuse for unlawful acts, nevertheless it seems to us that the employees who performed these mechanical and ministerial functions under the instructions of Rhoades had no reason to know that they were doing anything unusual or unlawful or fraudulent.[3] Since they were guilty of no wrong in exercising their normal corporate functions, no wrong is attributable to MS&R under the doctrine of *respondeat superior*.

Considering now *de novo* the plaintiff's new theory of liability under Section 20(a) [15 U.S.C. § 78t(a)], we find no liability on the part of MS&R under that theory.

This provision of the statute provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

There is no proof in the record of the case at bar which would tend to show lack of good faith on the part of MS&R as a corporate entity distinct from Rhoades, nor is there any proof that MS&R as such a corporate entity "induced" Rhoades to commit "the act or acts constituting the violation" of Rule 10b–5.

■ The purpose of this provision obviously is to prevent the true owner of

---

3. Knowledge of a wrong, and substantial assistance in effecting it, are prerequisites for establishing liability on the "aiding and abetting" theory. Landy v. F. D. I. C., 486 F.2d 139, 162–63 (C.A. 3, 1973). See also Sennott v. Rodman & Renshaw, 474 F.2d 32, 39 (C. A. 7, 1973).

a business from escaping liability by insulating the parent company from the questionable activities by use of subsidiary corporations, or other amenable agents or straw parties. The provision is similar to those of the Interstate Commerce Act regarding "control" of carriers [49 U.S.C. § 5(2)], or those of the Public Utility Holding Company Act [15 U.S.C. § 79b(a)(7)(B)] in the utilities field. It contemplates "penetrating the corporate veil" in appropriate cases, when demandad by the public interest.

The cases relied upon by plaintiff will be found to involve situations where the defrauded or complaining party has had dealings with the corporation, in the ordinary course of its business, and employees of the corporation have taken advantage of the relationship for their own private gain. In the *Ute* case, for example, which plaintiff cites as an authority under Section 20, though the Supreme Court does not cite that section (see 406 U.S. at 152–54, 92 S.Ct. 1456, 31 L.Ed.2d 741), the bank was a recognized agency playing a part in the statutory scheme for distributing tribal Indian property, and held all the stock certificates and defendants were under a fiduciary duty towards the Indians; in spite of which they undertook to make a market for and encourage sales of stock, rather than discouraging it and calling attention to the mandatory legend on the certificates warning the beneficiaries that the value of the stock was uncertain and that it was of a distinctive character and not ordinary stock in a business corporation. (406 U.S. at 138, 92 S.Ct. 1456, 31 L.Ed.2d 741). It seems quite proper that the Court should conclude, under the circumstances of the *Ute* case, that "The liability of the bank, of course, is coextensive with that of Gale and Haslem." (406 U.S. at 154, 92 S.Ct. at 1472). The acts violative of 10b–5 were "acts performed when they were obligated to act on behalf of the

mixed-blood sellers" (406 U.S. at 154, 92 S.Ct. at 1472).

In the case at bar, however, MS&R as a corporate entity entered into no relationship with plaintiff. The stock transaction in connection with which a violation of 10b–5 occurred was *res inter alios acta* insofar as MS&R was concerned. It did not own or sell its own stock. It did not issue any shares of its own stock as in a "take-over" of another corporation.[4] The deal was purely one between plaintiff and defendant as individual stockholders.

Likewise in cases involving relationships between investors and stockbrokers or investment counsel, it seems clear that "control" in the Section 20 sense is appropriately found to exist there. SEC v. First Securities Co., 463 F.2d 981, 987 (C.A.7, 1972). But again, the dealings between the investor and the firm involve a relationship which did not exist in the case at bar. Plaintiff, himself a shrewd and successful businessman, did not seek any investment advice from the corporation in which he owned a 50 percent interest.

Plaintiff seeks to make much of the fact that Rhoades required MS&R mail to be opened by MS&R employees, and not by plaintiff's employees. This seems to be a normal consequence of the separation of the affairs of the two companies which took place in 1967 (See 353 F. Supp. at 799). In SEC v. First Securities Co., 463 F.2d 981, 985 (C.A. 7, 1972), the fraudulent president of the company had forbidden anyone else "to open mail addressed to him, . . . even if it was addressed to First Securities for his attention." In that case, there was a specific duty of supervision of the firm's officers and employees imposed by Rule 27 of the N.A.S.D. which was violated by the mail secrecy. (*ibid.*, at 988). No such rule exists which plaintiff may invoke in the case at bar.

4. Cf. the issuance of debentures in Escott v. Barchris Corp., 283 F.Supp. 643, 654 (S.D. N.Y.1968), where the corporation, however, was not a defendant; and the exchange of shares in Lanza v. Drexel & Co., 479 F.2d 1277, 1286 (S.D.N.Y.1973), involving an acquisition by the same corporation. See also Judge Judd's comments in Moerman v. Zipco, Inc., 302 F.Supp. 439, 447–48 (E.D.N.Y. 1969), aff'd 422 F.2d 871 (C.A.2, 1970).

■ Accordingly, after consideration of plaintiff's new theories of liability, we conclude that no case has been proved establishing liability on the part of MS&R.

This opinion shall be deemed to constitute the Court's findings of fact and conclusions of law. In addition we have made such acceptable findings as counsel for MS&R have submitted as desirable and constituting in their opinion an adequate basis (under the Court of Appeals opinion) for supporting this Court's conclusion with respect to MS& R.

### JUDGMENT

And now, this 25th day of September, 1974, for the reasons set forth in the foregoing opinion,

It is ordered, adjudged, decreed, and finally determined, that judgment be and it hereby is entered in favor of plaintiff Rochez Bros. Inc., and against defendant Charles R. Rhoades, in the amount of $3,125,000.00 with interest from July 23, 1968;

And it is further ordered, that the above-styled action be and it hereby is dismissed as against the corporate defendant MS&R.