860 F.2d 944
 Fed. Sec. L. Rep. P 94,081
MACE NEUFELD PRODUCTIONS, INC., Mace Neufeld,Plaintiffs-Appellants,
v.
ORION PICTURES CORPORATION; Orion Television Incorporated;
Bernard Productions Incorporated; Barney
Rosenzweig, Defendants-Appellees.
 No. 86-6040.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 7, 1988.
Decided Nov. 3, 1988.
 
 Daniel C. Rosenberg, Santa Monica, Cal., forplaintiffs-appellants.
 Albert F. Smith, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON, CANBY and WIGGINS, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Mace Neufeld Productions, Inc. (Neufeld) appeals the district court's dismissal of its federal securities claim and pendent state law claims against Orion Pictures Corporation, Barney Rosenzweig, et al. (Orion). Neufeld alleges that Orion violated section 10(b) of the Securities Exchange Act of 1934 by fraudulently selling Neufeld an "investment contract," a security under federal securities law. The United States District Court for the Central District of California held that Neufeld's contract with Orion was not a "security" under the Act and it dismissed Neufeld's federal claim under Federal Rule of Civil Procedure 12(b)(6). In addition, the district court dismissed Neufeld's eleven pendent state law claims. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 BACKGROUND
 
 2
 Prior to 1982, Neufeld had been producing the television series "Cagney and Lacey." In 1982, Neufeld entered into a written contract with Orion Pictures and a television producer, Barney Rosenzweig. Under the contract, Orion and Rosenzweig were to assume the production of the show from Neufeld and Neufeld was to invest cash and expected future compensation with the series enterprise.[1] In return, Neufeld was entitled to receive (1) 50% of all fees paid by Orion to Rosenzweig in connection with Rosenzweig's rendering of production services, and (2) 72% of all net profits from the series that exceeded a certain level.
 
 
 3
 The contract expressly provided for Neufeld's limited participation in the production of the series. Under the contract, Orion was required to "consult with [Neufeld] with regard to the exercise of Orion's approval over all substantial matters, including without limitation, business, financial, legal, and accounting matters." Moreover, Rosenzweig's salary as producer of the series was set by the contract with any increases "subject to [Neufeld's] approval." Neufeld contends that Orion and Rosenzweig breached this contract and it brought suit against Orion in federal district court for violation of the federal securities laws and various state laws.
 
 ANALYSIS
 
 4
 We review the district court's Rule 12(b)(6) dismissal of Neufeld's federal securities claim de novo. Stone v. Millstein, 804 F.2d 1434, 1439 (9th Cir.1986).
 
 
 5
 I. Is The Neufeld-Orion Contract A Security?
 
 
 6
 Neufeld contends that the district court erred in dismissing its federal securities claim because its contract with Orion was an "investment contract," and thus a security, within the federal act.[2] We hold that this private agreement, negotiated directly and individually by the parties, is not a security.
 
 
 7
 Our decision that Neufeld's contract with Orion does not constitute an investment contract is supported by Marine Bank v. Weaver, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982). In Marine Bank, the Supreme Court held that a private agreement that provided for one party to share in the profits generated entirely by the other parties' business did not fall within the definition of a security under the 1934 Act because the agreement was not publicly offered or traded, it was unique, and it was negotiated "one-on-one" by the parties. Id. at 560, 102 S.Ct. at 1225. The Court reasoned that, in general, Congress intended the securities laws to cover those investments "ordinarily and commonly considered to be securities in the commercial world." Id. at 559, 102 S.Ct. at 1225. See also H.R.Rep. No. 85, 73d Cong., 1st Sess. at 11 (Definition of "security" in the Act is necessarily broad so as to include the many types of instruments that fall within the "ordinary concept of a security."). While the Marine Bank Court did note that the antifraud provisions of the securities laws extend to uncommon and irregular instruments, Marine Bank, 455 U.S. at 556, 102 S.Ct. at 1223, the Court stressed that all the uncommon instruments found to constitute securities in prior cases involved offers to a number of potential investors, not just to one. Id. at 559, 102 S.Ct. at 1225. The Court emphasized that in SEC v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), 42 persons purchased interests in a citrus grove during a four-month period. Id. Similarly, in SEC v. C.M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943), offers to sell oil leases were sent to over 1,000 prospects. Thus, the Court in Marine Bank concluded that a single unique agreement, "negotiated one-on-one" between two parties, that is not ordinarily considered to be a security and that was never designed to be publicly traded, is not a security under the Act. Id.[3]
 
 
 8
 Similarly, Neufeld's private agreement with Orion is not the type of instrument that is ordinarily or commonly thought to be a security.[4] The contract between Neufeld and Orion provided for Neufeld to pass its production responsibilities on to Orion and Rosenzweig. Under the agreement, Neufeld was to remain involved in the continuing series enterprise and, like the parties in the Marine Bank contract, Neufeld was entitled to share in the profits generated by the series. No prospectus was sent to Neufeld or any other would be investor. The agreement between Neufeld and Orion was unique, private, and never intended to be publicly traded. Under the reasoning of Marine Bank, it is not the type of contract that Congress intended to be included within the definition of a security under the 1934 Act. Congress' purpose in enacting this legislation was to protect public investors and to restore confidence in U.S. capital markets. H.R.Rep. No. 97-626, 97th Cong. 2nd Sess., reprinted in 1982 U.S.Code Cong. & Admin.News 2780, 2781. The Act was not intended to extend to ordinary, individually negotiated private commercial loan transactions. See Bronstein v. Bronstein, 407 F.Supp. 925, 930 (E.D.Pa.1976).
 
 
 9
 Finally, we agree with the district court that the measure of control expressly granted to Neufeld in the contract is not characteristic of a security. An investment contract is a contract, transaction, or scheme where an investor (1) invests his money, (2) in a common enterprise, (3) with the reasonable expectation of receiving profits derived from the entrepreneurial or managerial efforts of others. See United Housing Foundation Inc. v. Forman, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975); Howey, 328 U.S. at 298, 66 S.Ct. at 1102.[5] Under the contract, Orion was required to "consult with [Neufeld] with regard to the exercise of Orion's approval over all substantial matters, including without limitation, business, financial, legal and accounting matters." In addition, the producer of the television series, Rosenzweig, was to be "paid by Orion fees in specified amounts to be subject to [Neufeld's] approval."
 
 
 10
 The contract, therefore, contemplated Neufeld's involvement in the series enterprise. The contract did not grant this power to an inexperienced, unsophisticated investor, but rather, it granted power to the previous producer of the series. Cf. Deutsch Energy Co. v. Mazur, 813 F.2d 1567, 1570 (9th Cir.1987) (court relies on parties' general business knowledge to conclude that the parties cannot claim their dependence on the promoters or their inability to exercise the powers granted them in the contract). Neufeld's power to demand consultation with Orion and its power to refuse increases in the producers' salary take on heightened importance in light of Neufeld's prior experience in the production of this particular series. The district court accordingly did not err in concluding that the degree of Neufeld's control was inconsistent with the contract's being a security, expected to bring a profit from the efforts of others.
 
 
 11
 II. The Dismissal of Neufeld's Pendent State Law Claims.
 
 
 12
 Neufeld concedes that if its federal securities claim was properly dismissed, the dismissal of its pendent state law claims must also be deemed proper. We therefore uphold the district court's dismissal of Neufeld's state law claims.
 
 CONCLUSION
 
 13
 The judgment of the district court dismissing Neufeld's securities claim and pendent state law claims is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 There was some dispute at the inception of this litigation as to whether Neufeld invested money in the program. The complaint does allege, however, that Neufeld invested cash as well as expected compensation and profits under the contract
 
 
 [2]
 Section 3(a)(10) of the 1934 Act, as set forth in 15 U.S.C. Sec. 78c(a)(10), provides:
 "(a) ... When used in this chapter, unless the context otherwise requires--
 "(10) The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, pre-organization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing...."
 
 
 [3]
 See also Great Western Bank & Trust v. Kotz, 532 F.2d 1252, 1259 (9th Cir.1976) (individually negotiated agreement designed to meet the needs of both parties involved in the contract cannot be said to involve an "investment" that is pooled with monies from other investors for purposes of the securities laws)
 
 
 [4]
 Neufeld argues that its agreement is analogous to a limited partnership, which the commercial world may ordinarily and commonly consider to be a security. The fact is, however, that specific rules exist on the formation of a limited partnership and the parties here never formed or attempted to form a legal partnership relationship. See U.L.P.A. Sec. 2 (must be a written certificate of limited partnership filed to form a limited partnership). We find that Neufeld's agreement with Orion is more like the contract between the parties in Marine Bank; Neufeld and Orion formed a private contract that would not normally be considered a security. We look, therefore, to the factors evaluated by the Marine Bank Court, namely the number of potential investors solicited, in analyzing this agreement
 
 
 [5]
 We have held that, to qualify as an investment contract under Howey, the agreement need not contemplate profits derived solely from the efforts of others. Hocking v. Dubois, 839 F.2d 560, 568 n. 8 (9th Cir.1988); SEC v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476, 482 (9th Cir.1973). The "essential managerial efforts," however, must still be those of others than the investor. Turner, 474 F.2d at 483