E. Grimsley GRAHAM *v.* David KANE et al

78-176                                   576 S.W. 2d 711

Opinion delivered January 29, 1979
(Division I)
[Rehearing denied March 5, 1979.]

*Wright, Lindsey & Jennings,* for appellant.

*Friday, Eldredge & Clark,* by: *Larry W. Burks,* for appellees.

*Harvey L. Bell,* Securities Commissioner, for State of Arkansas, amicus curiae.

JOHN I. PURTLE, Justice. This case involves the sale of two units of a limited partnership in a project known as the Walker Springs, which is located in Knoxville, Tennessee. The appellee was a broker and dealer in securities in several states, including Arkansas. The Walker Springs project was not registered with the Securities Department in Arkansas or Tennessee; neither had there been an exemption from registration or a request for such exemption. In the latter part of 1973, the appellant purchased these units and at that time

was furnished material which clearly and unequivocally stated that the units were not registered with the Securities Department under the Arkansas Securities Act. There was a suggestion in the material furnished to the appellant that he might discuss the matter with his accountant and attorney. Much of the material was mailed to the purchaser subsequent to the agreement to purchase these two units.

The primary purpose of the appellant in making the purchase was for a tax shelter, or, in other words, to reduce the amount of taxes he would have to pay. Also, he expected to receive a cash flow after the first few years of the existence of the project. The project was slow in developing, thereby creating a cost over-run and an assessment to the partners for additional amounts of money in order to complete the project.

Sometime in 1976, the appellant became dissatisfied with the performance of his investment and determined that the securities had not been exempted under the Arkansas Securities Act. Thereupon, he tendered his two shares and demanded the appellee return the full purchase price. Appellant had filed federal and state income taxes for 1973, 1974 and 1975 in which he listed deductions resulting in tax savings of $30,147. Had he carried the tax savings plan through 1976, it was projected that his total tax savings would have been $56,838. He did not claim the deduction for 1976 and amended his 1973 return in which he had saved $5,-537 in taxes, which left a net tax savings received by appellant at the time of the trial of $24,600. His demand for cancellation included return of the $36,544, which he had paid for the units up until that time.

The trial court, in a well considered and no doubt agonizing opinion, carefully pointed out that there were no issues of fraud or misrepresentation involved on the part of anyone in the law suit. In fact, the trial court pointed out that the appellee had gone to the trouble of checking with the Securities Commission for the State of Arkansas prior to setting up this limited partnership and determined, in his own opinion, that this transaction was not considered a security. He relied upon the opinion of an attorney for the Securities Department.

Nevertheless, the court found that the units in the Walker Springs limited partnership purchased by the appellant were securities or investment contracts as those terms are used in Ark. Stat. Ann. § 67-1247(1) (Repl. 1966). He further held that the units concerned herein were not exempt from registration under the requirements imposed by Ark. Stat. Ann. § 67-1241 (Repl. 1966). We agree with the trial court on these findings.

The trial court placed great emphasis on the opinion of this Court in *Schultz* v. *Rector-Phillips Morse, Inc.*, 261 Ark. 769, 552 S.W. 2d 4 (1977). The trial court quoted from *Schultz* as follows:

"It was never intended that the securities law be used as a tool of sophisticated investors to invest in projects or promotional schemes and reap the tax benefits accruing from such ownership and then have the option several years later to determine whether they want to retain the investments or get their money back with interest while presumably retaining the tax benefits."

We agree with the statement of the trial court as previously set out in *Schultz*. However, neither was it the intent of the Arkansas Securities Act to allow the law to be used by sophisticated brokers and dealers for promotional projects thereby reaping consultant benefits, sales commissions, and other benefits, without fully complying with the requirements of the law which in this case is set forth in Ark. Stat. Ann. § 67-1256(a) (Repl. 1966), as follows:

"(a) Any person who

(1) offers or sells a security in violation of Section . . . 7 . . . (§ 67-1241) . . . ,

(2) . . . is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with the interest at six per cent [6%] per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the

tender of the security and any income received on it, or for damages if he no longer owns the security. . . . "

The General Assembly has thus adopted the doctrine of caveat venditor for sellers of securities. It is strict responsibility but not necessarily strict liability.

In this case the equity does not preponderate to any great degree in favor of either side. Therefore, it resolves to the question of interpreting the statute as intended by the General Assembly. The trial court found that the appellant was a man of more than ordinary intelligence. The court further found that Dr. Graham had invested in other real estate holdings and had some dealings in stocks and bonds. We must keep in mind that the Securities Act was passed by the General Assembly primarily for the purpose of protecting members of the public who might invest in offerings by promoters of such securities as we have here.

It is interesting that the trial court, appellant, appellee and this Court rely heavily upon the *Schultz* case. The distinction between the two cases is primarily factual. In *Schultz*, the purchasers were "sophisticated" dealers in securities and presumably had superior knowledge to that possessed by the seller in that case who was well versed in matters concerning real estate but was not shown to have had any particular training or ability in securities. In the instant case, the appellee has vast knowledge and deals at great length in matters governed by the various security acts. Appellee clearly possessed the greater degree of knowledge in the securities field than did appellant who was himself more learned and experienced, and perhaps more intelligent, than the average person. *Schultz* established that the doctrine of laches, estoppel, and waiver may apply as a defense available to an action of this nature. These matters were argued vigorously in the court below. The case was fully developed except for the last portion of Ark. Stat. Ann. § 67-1256(a)(2) (Repl. 1966), which states:

". . . less the amount of any income received on a security, upon the tender of the security and any income received on it, or for damages if he no longer owns the security. . . . "

954

Keeping in mind the intent of the General Assembly, we feel that, although there is no fraud, misrepresentation, or scienter, involved in this case, it must nevertheless be reversed. The benefits accruing to the public by this holding, in protecting them from illegal sales, will no doubt outweigh the inequities, if any, which might exist in this particular case.

Reversed and remanded.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and BYRD, JJ.