MIFFLIN ENERGY SOURCES, INC., a Pennsylvania Corporation, Plaintiff,

v.

Donald G. BROOKS, Howard G. Brooks, Gary Doverspike, Vicky McMeans, Carla Grube, Dennis Doverspike, William Doverspike, Laurie Carney, Connie Zeitler, Michael McMeans, Randy Doverspike, Helm Mining Company, a partnership, and Keystone National Bank, a national banking association.

Civ. A. No. 80–922.

United States District Court, W. D. Pennsylvania.

Dec. 2, 1980.

Edmund S. Ruffin, III, William Rodgers, Jr., Thorp, Reed & Armstrong, Pittsburgh, Pa., for plaintiff.

M. Bruce McCullough, Samuel W. Braver, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendants.

## MEMORANDUM ORDER

WEBER, Chief Judge.

Plaintiff is the purchaser of all the shares of a corporation engaged in strip mining operations. The plaintiff brings a claim of fraud in the sale of the shares, alleging jurisdiction under the federal securities laws.

Defendants have filed a Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(4) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants contend that this court does not have jurisdiction over the subject matter since the transaction which has given rise to the dispute is not a "purchase of securities" or a "security transaction," as that term is defined in the Securities Act of 1933, 15 U.S.C. § 77(b), and the Securities Act of 1934, 15 U.S.C. § 78c(a). Defendants claim that this transaction was a purely commercial sale of a coal strip mining business, an incidental part of which involved the acquisition of stock.

The two statutes make certain practices unlawful in the offer or sale of any securities, or in connection with the purchase or sale of any security. Both Acts define the word "security" to include "stock." Congress has used the word "stock" to identify a covered transaction, and the parties hereto have designated the written agreement involved here as a "stock purchase agreement." The agreement here deals specifically with the sale of all the outstanding shares of stock of a corporation.

To take this transaction outside this jurisdictional reach of the federal securities acts, the Defendants have urged the application of the "risk capital" test, as set forth in a series of cases decided by the United States Supreme Court.

These cases begin with *S. E. C. v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). In *Howey* the Court was faced with the problem of whether the sale of units of land in a Florida citrus grove by deed, coupled with a management contract for cultivating and marketing the produce and remitting the net proceeds to the owner, constituted an "investment contract" under the Securities Act of 1933. The statutory definition of "security" includes "investment contract," but the term "investment contract" is not defined in the statute. However, the term has been long used in state "blue sky" laws and has been broadly and uniformly construed by many state courts in the light of the economic reality of the situation to cover the "placing of capital or the laying out of money in a way intended to secure income or profit from its employment." *State v. Gopher Tire & Rubber Co.*, 146 Minn. 52, 56, 177 N.W. 937, 938. Thus Congress was employing a term whose meaning had been crystallized by prior judicial interpretation. The Court held this arrangement to constitute an "investment contract" within the statute.

■ In the instant case, however, we are not dealing with a peculiar transaction which may or may not qualify as a securities transaction. The transaction in question here is the sale of 100% of the shares of stock in a coal mining business. The term "stock" has a common and well accepted meaning in securities law.

Since stock has a traditional and accepted meaning and is indeed one of the most common forms of securities, it is not necessary for the purchase agreement in this case to meet the test generally used to identify an investment contract. What we have here is statutory as well as common law stock. *See generally, Bronstein v[s]. Bronstein*, 407 F.Supp. 925 (E.D.Pa. 1976). *Titsch Printing, Inc. v. Hastings*, 456 F.Supp. 445, 449 (D.Colo.1978).

The fact that the subject of the purchase and sale is specifically designated as "stock" by the parties themselves gives rise to a presumption that we are dealing with "stock" as it is commonly defined.

■ The Defendants contend that the economic reality test of *United Housing Foundation v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), should be applied, with the result that the reality of the transaction here was only the sale of a business. In the *Forman* case, the Court found that despite the use of the term "stock", the economic reality of the transaction was the acquisition of a residential apartment in a state–subsidized cooperative. The fact that the transaction was evidenced by something called a share of "stock" would not alter the expectations of the purchasers who were not likely to believe that what they purchased was stock in the traditional sense. The shares involved in the *Forman* case had none of the characteristics "that in our commercial world fall within the ordinary concept of a security." *Id.* at 852, 95 S.Ct. at 2060. The "stock" lacked the attributes of a share of stock in a business corporation such as the right to receive dividends, negotiability, voting rights, and the prospect of appreciation in value.

Application of the economic reality test of *Forman* is not necessary here. The present contract is a stock purchase agreement and is so titled. The stock in the corporation has all the traditional attributes of stock, including the right to receive dividends, negotiability, voting rights, and the

potential of appreciation in value. There is no evidence to show that what we are dealing with in this transaction is anything other than stock within the definition of the securities laws. Furthermore, *Forman* has been construed to hold:

> ... [T]hat if the application of the Acts depended in all cases solely upon the economic realities of the transaction, an investor might be unjustly misled by the use of a particular label and form to believe his purchase protected by the securities laws. Consequently the Court stated that when the existence of a covered security is in issue, the name given to an instrument cannot be disregarded, and may, in fact, be highly relevant, especially if the instrument possesses some of the intrinsic features customarily associated with it. *Bronstein v. Bronstein, supra,* at 928.

Defendants cite several cases in which the sale of a business which included the transfer of ownership of the stock in that business were held to be purely commercial transactions, outside the scope of the Securities Acts. *Chandler v. Kew, Inc.,* [1979 Transfer Binder], Fed.Sec.L.Rep. (CCH) ¶ 96,966 (10th Cir. April 19, 1977) (not elsewhere published); *Bula v. Mansfield,* [1979]. Fed.Sec.L.Rep. (CCH) ¶ 96,964 (D.Colo. May 13, 1977; *Dueker v. Turner* [1979 Transfer Binder], Fed.Sec.L.Rep. (CCH) ¶ 97,386 (N.D.Ga. Dec. 28, 1979). All of these cases, however, involved a contract for the sale of a business pursuant to which the purchasers were to receive 100% of the stock. The stock in those was a mere "indicia of ownership," and not the substance of the sale itself.

In this case, the substance of the sale is 100% of stock in a business. This is clearly evidenced by the terms of the stock purchase agreement. Ownership of the business is a by-product of this transaction, but is not sufficient to remove what is clearly expressed in the terms of the purchase and sale of stock from the purview of the federal securities laws.

The parties are presumed to have chosen this method of transfer to achieve all the intangible benefits which accompany a sale in this form as opposed to the purchase of the physical assets of the business. This transaction is one in which the purchaser was buying the liabilities of the corporation as well as the assets and the seller also received certain recognized benefits from a sale in this form. The federal securities laws are to be liberally construed to effectuate their purpose.

> The balance sheet of a company is a prime consideration that goes into the negotiating and eventual arrival at a purchase price. There is no question that in the event of a material misrepresentation the defrauded purchasers have an action for common law fraud. However, someone who purchases shares of stock, whether it be 1 per cent or 100 per cent, also has the reasonable expectation that he is a beneficiary of protection afforded by the federal securities laws. The policy behind the securities laws supports that expectation. *Titsch Printing Co., supra,* at 449.

The parties to the agreement in this case structured their transaction in the form of a stock purchase agreement. The purchaser is entitled to the protection of the securities laws, as is expected in the purchase and sale of ordinary stock.

Since we have found that this court does have jurisdiction over the claims asserted here, the state claims can be heard on the theory of pendent jurisdiction.

■ The Defendants have also claimed that the complaint fails to state a cause of action under § 17 of the 1933 Act since there is no implied private cause of action for alleged violations of the Securities Act of 1933. There has been no definitive statement by the Supreme Court on this issue. It has been the practice of the Third Circuit, however, to allow private causes of action under § 17 of the 1933 Act and this court will follow that trend. *Kirshner v. United States,* 603 F.2d 234, 241 (2 Cir. 1978); *Wulc v. Gulf & Western Industries, Inc.,* 400 F.Supp. 99, 103 (E.D.Pa.1975); *B & B Investment Club v. Kleinert's Inc.,* 391 F.Supp. 720, 726 (E.D.Pa.1975); *Crowell v.*

*Pgh. & L. Erie R. R.*, 373 F.Supp. 1303, 1310 (E.D.Pa.1974); *Dorfman v. 1st Boston*, 336 F.Supp. 1089, 1093 (E.D.Pa.1972).

In accordance with the foregoing Opinion, the Defendants' Motion to Dismiss for lack of jurisdiction is DENIED.