**Ronnie COLE, Appellee,**

v.

**PPG INDUSTRIES, INC., Appellant.**

**Ronnie COLE, Appellant,**

v.

**PPG INDUSTRIES, INC., Appellee.**

**Nos. 81–1742, 81–1791.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1982.

Decided June 21, 1982.

James Howard Smith, Little Rock, Ark., for appellee/cross-appellant. ·

Isaac A. Scott, Jr., Wright, Lindsey & Jennings, Little Rock, Ark., for appellant.

Before HENLEY[*] and McMILLIAN, Circuit Judges, and MEREDITH, Senior District Judge.[**]

HENLEY, Senior Circuit Judge.

This appeal and cross-appeal involve a series of transactions between the parties occurring from 1973 to 1977. PPG Industries, Inc. (PPG) has appealed the district court's[1] order allowing Cole to recover a total of $45,000.00 paid to PPG on three separate occasions during this period for the sale of unregistered securities. Cole has cross-appealed that portion of the district court's judgment allowing PPG recovery on its $10,000.00 counterclaim based on Cole's written guaranty for inventory purchased by Car Color and Supply, Inc. on open account. For reasons to be stated, we affirm the judgment of the district court in all respects.

PPG is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and having its principal place of business in that state. Among other things, it is engaged in the sale of paint products. Prior to the transactions giving rise to this dispute, PPG's only automotive paint distributor in the Pulaski County, Arkansas area was Loetscher's Southwest Auto Supply. Loetscher's sold only one line of PPG paints.

In 1973 PPG started actively seeking to increase its market share of the automotive paint supply business in the area. In October of that year, it began to focus on Cole as a desirable person to initiate and manage this expansion effort, and it approached him with a proposal whereby Cole would manage and eventually own a corporation which would act as a distributor of PPG's automotive paint products. As a part of its presentation, PPG had Cole flown at its expense to Pennsylvania, where a presentation was made regarding the business prospects of a paint supply distributorship in the Pulaski County area.

When Cole was first approached by PPG in October, 1973, he was employed as a salesman at Loetscher's. He was thirty years old and a high school dropout. The district court found as a fact that Cole at that time was relatively unsophisticated in the business dealings and negotiations which resulted in the transactions giving rise to this dispute. But Cole was nevertheless enthusiastic about the prospect of owning and managing his own distributorship, and the parties' negotiations resulted in the incorporation of Car Color.

Car Color was incorporated on May 6, 1974, and was capitalized with $30,000.00

* The Honorable J. Smith Henley assumed senior status June 1, 1982.

** The Honorable James H. Meredith, United States Senior District Judge, Eastern District of Missouri, sitting by designation.

1. The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.

supplied by PPG in exchange for 3,000 shares of Car Color's stock. Additional cash was advanced by PPG in exchange for stock in Car Color in July, 1974 and March, 1975 in the respective sums of $10,000.00 and $5,000.00. From the date of incorporation in May, 1974 until 1977, PPG was the sole shareholder of Car Color. This stock had not been registered, nor had a proof of exemption been filed with the Arkansas Securities Commissioner.

On May 7, 1974, the day after Car Color was incorporated, the parties executed an Incorporation Agreement and an Employment Agreement. In accordance with the terms of these agreements, Cole paid $2,000.00 in "good faith" money into an escrow account. Any profits generated by Car Color were also to be placed into this account.

The May 7 agreements contemplated that Cole would initially operate the distributorship as a manager, and that he would eventually become the owner of Car Color by applying the funds in the escrow account toward the purchase of PPG's Car Color stock or by investing his own personal funds. Cole, however, was to receive no stock until PPG had been paid in full for the outstanding stock.

Initially, Cole actually acted primarily as a salesman. His wife kept the books and assisted extensively in the internal operations of the distributorship. During the first six months of operation, Car Color operated at a profit, and in April, 1975 $2,210.00 of Car Color's profits was paid into the escrow account, thus increasing to $4,210.00 the total funds available for the purchase of the Car Color stock. Car Color, however, did not show a profit after April, 1975. In addition, Cole and his wife separated in December, 1975 and were divorced in May, 1976. She had no further involvement in the business after December 31, 1975.

After January 1, 1976, Car Color began to deteriorate, and during 1976 PPG became increasingly dissatisfied with Cole's operation of the business. The parties had numerous disagreements over how the business could be operated profitably, but Cole felt that he could turn the distributorship around if he had full control of its operations. In any event, Car Color was hopelessly insolvent by the latter part of 1976, and on February 4, 1977 Car Color's corporate charter was revoked for nonpayment of the Arkansas corporation franchise tax. Cole was not made aware of this fact.

On or about February 24, 1977 Cole agreed to exercise his option to purchase all the stock of Car Color from PPG, and he prevailed upon his mother to provide the balance of $40,790.00 needed for the purchase of the stock. A cashier's check in this amount was given to PPG on that day.

In addition to exercising his option, on February 18, 1977 Cole gave PPG a postdated check in the amount of approximately $28,000.00 in payment of paint inventory purchased from PPG by Car Color on open account. At approximately the same time, Cole also executed a guaranty in favor of PPG for the purchase of inventory.

The district court found that Cole was under the impression that he could use the purchased stock as collateral for a bank loan. The funds from this loan would then have been used to cover his check for the purchase of the paint inventory and to operate Car Color. At the time that Cole's option was exercised, however, the Car Color stock was worthless. The district court also found, however, that Cole was the moving party in seeking to exercise his option, and that he did so against the advice of his accountant and even PPG's employees. This finding, not being clearly erroneous, will not be disturbed here.

After Cole purchased the Car Color stock, he was unable to secure a bank loan, and consequently his inventory check to PPG was returned for insufficient funds when PPG presented it for payment. Car Color subsequently failed as a business in October, 1977.

By letter dated November 8, 1977, Cole, by his attorney, tendered return of the stock and demanded return of the purchase price of the stock. PPG failed to do so, and

Cole filed suit in the Circuit Court of Pulaski County, Arkansas, and prayed for judgment in the amount of $40,790.00 and for punitive damages in the amount of $25,000.00.[2] The case was removed to the United States District Court for the Eastern District of Arkansas, and PPG then filed an answer and counterclaimed for the price of supplies sold to Car Color on open account less the amount received from the sale of the supplies.

The district court found that the Car Color stock constituted securities under the Arkansas Securities Act, Ark.Stat.Ann. § 67–1235 *et seq.*, and that the stock was not exempt from registration as an isolated non-issuer transaction under the terms of Section 14(b)(1) of the Act, Ark.Stat.Ann. § 67–1248(b)(1), where the issuer, PPG, benefited directly from the stock transfer. The district court also found that the transactions did not involve an "insider" as described in *Rucker v. La-Co., Inc.*, 496 F.2d 850 (8th Cir. 1974). Finally, the district court found that although the transactions might be exempt from registration as a private placement exemption under Section 14(b)(9) of the Act, Ark.Stat.Ann. § 67–1248(b)(9), PPG had nevertheless failed to meet the requirements of that section because it had failed to file a proof of exemption as required by Section 14(f) of the Act, Ark.Stat.Ann. § 67–1248(f). In this regard, the court held that Rule 8(F)(3) of the Arkansas Securities Commissioner, which excuses certain transactions from the proof of exemption requirement of Section 14(f), was unavailable to PPG for two reasons. First, the district court found that there was no evidence that the Commissioner had the authority to promulgate the rule. Second, the court found that the rule, if valid, could not be applied because the transaction did not meet the rule's requirement that both Cole and PPG must "form" the corporation.

## I. PPG'S APPEAL

The district court essentially held that because the securities were not exempt from registration, and because Cole was not a person sophisticated in transactions of this kind or having inside knowledge of the business, he was entitled under the rule set forth in *Graham v. Kane*, 264 Ark. 949, 576 S.W.2d 711 (1979), to a refund of the money paid for the securities, notwithstanding the absence of fraud, misrepresentation, or scienter on PPG's part. *Id.* 576 S.W.2d at 713–14. For the purposes of its first three contentions on appeal, PPG concedes that the rule in *Graham v. Kane* is as stated, but that *Graham v. Kane* is inapplicable here, either because the securities are exempt from registration or because Cole was an insider having superior knowledge of the business.

*The Effect of Section 14(b)(9) and Rule 8(F)(3)*

■ PPG's first contention is that it was not required to register the Car Color stock or to file a proof of exemption because the transactions of May 6 and 7, 1974 constituted a corporate formation and private placement of securities under Section 14(b)(9) and Rule 8(F)(3). These two provisions, when combined, essentially exclude from registration and from the filing of a proof of exemption "any transaction pursuant to an offer," if:

(1) the offer is directed to not more than twenty-five persons;

(2) the seller reasonably believes that all buyers in the state are purchasing for investment;

(3) no commission or remuneration is paid or given, directly or indirectly, for soliciting the prospective buyer in this state; and

(4) the transaction involves the formation of a corporation and receipt of securities of that corporation by five persons or less.[3]

---

2. This complaint was later amended in the federal district court to include, among other things, a prayer for judgment in the amount of $45,000.00 and for treble damages in the amount of $135,000.00.

3. Sections 14(b)(9) and (f) of the Act, Ark.Stat. Ann. § 67–1248(b)(9) and (f), provide, in pertinent part as follows:

(b) The following transactions are exempted from [registration]:

Initially, we observe that Section 13(j)(2) of the Act defines an "offer" as including "every attempt or offer to dispose of, or solicitation of an offer to buy, a security *or interest in a security* for value." Ark.Stat. Ann. § 67–1247(j)(2) (emphasis supplied). Because we think an option to purchase a security is an interest in the security, we find that PPG, by agreeing to grant Cole the option, made an "offer" to Cole on May 7, 1974, and that, for the purposes of Section 14(b)(9), all subsequent payments to the escrow account and other subsequent transactions between the parties and involving the exercise of the option were "transactions pursuant to an offer" as contemplated by the statute. We must therefore determine whether the transactions of May 6 and 7, 1974 were exempt from registration and proof of exemption requirements of the Act.

The district court held that even if the transactions were properly exempted from registration under Section 14(b)(9), Section 14(f) removed the availability of that exemption unless a proof of exemption was filed. Rule 8(F)(3) was held not to operate to waive the Section 14(f) requirement, because (1) the transactions were not characterized as a corporate "formation" by Cole and PPG;[4] and (2) there was no evidence that the Commissioner of Securities had the authority to promulgate Rule 8(F)(3) "in conflict with the legislative enactment." We need not address the issue whether both Cole and PPG "formed" the corporation within the meaning of the rule, because we agree with the district court that the rule was not a valid exercise of the Commissioner's authority under the Act.

For the purposes of this appeal, Sections 14(b)(9) and (f) can be said to give the Commissioner the following pertinent powers:

(1) the power to withdraw or further condition the availability of the exemption;

(2) the power to increase or decrease the number of offerees to whom the exemption applied;

* * * * * *

(9) any transaction pursuant to an offer directed by the offeror to not more than twenty-five (25) persons ... if (A) the seller reasonably believes that all the buyers in this State are purchasing for investment, and (B) no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer in this State; but the Commissioner may by rule or order, as to any security or transaction, or any type of security or transaction, withdraw or further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in clauses (A) and (B) with or without the substitution of a limitation on remuneration; ...

(f) Before any transaction shall be executed as an exempted transaction under Section 14(b)(9), (10), (11), or (14) [this section], a proof of exemption must first be filed with the Commissioner and the Commissioner by order shall not have disallowed the exemption within the next five (5) full business days. The proof of exemption shall contain a statement of the grounds upon which the exemption is claimed and a statement of which subsection of Section 14 [this section] the exemption is claimed. For every such proof of exemption filed with the Commissioner under subsection (b)(9) there shall be paid to the Commissioner a filing fee of one-tenth of one percent (¹/₁₀th of 1%) of the maximum aggregate offering price at which the securities are to be offered in this State, but the fee shall in no case be less than twenty-five dollars ($25.00) or more than five hundred dollars ($500).... The Commissioner shall have authority to amend or rescind under this subsection such filing fees by rule or order if the Commissioner determines that such fee is excessive under the circumstances.
*Id.* (brackets original).

Furthermore, the Commissioner's Rule 8(F)(3), which was in effect at the time of these transactions, provided:

F. *Private Placement Exemption.*

* * * * * *

(3) The filing requirements of Section 14(f) are not applicable where five persons or less form a corporation or limited partnership, or enter into a trust agreement and receive the securities which are issued pursuant to the incorporation, partnership agreement, or trust agreement, where the requirements of Section 14(b)(9) are otherwise complied with. This section has been deleted, and the rules governing this exemption are now found under the Commissioner's Rule 14(b)(9).

**4.** The district court held that PPG had "formed" the corporation on May 6, and had then distributed stock in the corporation to Cole on May 7.

(3) the power to waive the requirement that the seller must reasonably believe that all buyers are purchasing for investment;

(4) the power to waive the requirement that no remuneration be given for soliciting prospective purchasers; and

(5) the power to amend or rescind the filing fee requirement of subsection (f). Ark.Stat.Ann. § 67–1248(b)(9) and (f).[5] Nowhere in these two subsections, however, is there language that could reasonably be construed to give the Commissioner the power to waive the requirement that a proof of exemption must be filed.[6] Consequently, we hold that the rule is not a valid exercise of the rule-making authority granted to the Commissioner under Section 14(a) of the Act, Ark.Stat.Ann. § 67–1248(a),[7] and that PPG was required to file a proof of exemption with the Commissioner. By reason of PPG's not meeting this requirement, moreover, the private placement exemption is unavailable to PPG. See Ark.Stat.Ann. § 67–1248(f).[8]

*The Effect of Section 14(b)(1)*

■ PPG next argues that the transaction of February 18, 1977, wherein Cole exercised his option to purchase the Car Color stock, was exempt from registration because it was an isolated, non-issuer transaction under Section 14(b)(1). The district court, however, held that PPG was the "issuer" of the Car Color stock. We agree.

The purpose of the 14(b)(1) exemption is to exempt from registration small, isolated transactions between private individuals. See L. Loss, Securities Regulation 182–83 (1961). At least for the purposes of the Securities Act of 1933, however, such exclusions were not intended to apply to persons holding 100% of the outstanding stock of the issuing corporation.

> All the outstanding stock of a particular corporation may be owned by one individual or a select group of individuals. At some future date they may wish to dispose of their holdings and to make an offer of this stock. . . . Such [an] . . . offering may possess all the dangers attendant upon a new offering of securities. Wherever such a redistribution reaches significant proportions, the distributor would be in the position of controlling the issuer and thus able to furnish the information demanded by the [1933 Act]. This being so, the distributor is treated as equivalent to the original issuer and, if he seeks to dispose of the issue . . ., he be-

---

**5.** *See* note 3 *supra.*

**6.** PPG contends that the rule was held valid by the Arkansas Supreme Court in *Schultz v. Rector-Phillips-Morse, Inc.*, 261 Ark. 769, 552 S.W.2d 4 (1977) (en banc). A careful reading of that case, however, reveals that the validity of the rule was assumed, and not decided, and that the assumedly valid rule was held inapplicable to the transaction then being considered. *Id.* 552 S.W.2d at 12. It further appears that the issue of the validity of the rule had not been raised in that case.

**7.** That section provides that the Commissioner may from time to time make such rules as are necessary to carry out the provisions of the Act, including rules governing registration statements, insofar as they are not inconsistent with the provisions of the Act. The rule here, however, is clearly inconsistent with the provisions of Sections 14(b)(9) and (f).

We further observe, although no argument has been made on this point, that the Commissioner has the power under Section 14(b)(15) to exempt by rule or order any transaction deemed inappropriate for registration in the public interest or for the protection of inves-

tors. Such exemptions, moreover, are not subject to the proof of exemption requirements of Section 14(f). But the issue of the validity of rules promulgated under that subsection is not now before us, and, in any event, it is clear that the Commissioner did not rely on that subsection when promulgating Rule 8(F)(3).

**8.** *See* the first sentence of Section 14(f). Ark. Stat.Ann. § 67–1258(e) provides:

> No provision of this act imposing any liability applies to any act done or omitted in good faith in conformity with any rule, form, or order of the Commissioner, notwithstanding that the rule, form, or order may later be amended or rescinded or be determined by judicial or other authority to be invalid for any reason.

Thus, had PPG alleged and proved good faith compliance with Rule 8(F)(3), our result might be different. But PPG has not alleged such good faith compliance, and, indeed, the record does not appear to support such an allegation. Consequently, this subsection is unavailable to PPG.

comes subject to the act. The concept of control herein involved is not a narrow one, depending upon a mathematical formula of 51 percent of voting power, but is broadly defined to permit the provisions of the act to become effective wherever the fact of control actually exists.

H.R.No.85, 73rd Cong., 1st Sess. 13–14, reprinted in 2 J. Ellenberger & E. Mahar, Legislative History of the Securities Act of 1933 and Securities Exchange Act of 1934 (1973).

PPG argues that the "control" definition of issuer cited above is contained in the 1933 Act's definition of the term "underwriter," and not in that Act's general definition of "issuer." See 15 U.S.C. § 77b(4) and (11). In addition, PPG correctly points out that the term "underwriter" is not defined in the Arkansas Act. See generally Ark.Stat.Ann. § 67–1247. From these facts, PPG argues that it is not an issuer under the Arkansas Act, notwithstanding its prior ownership of 100% of the Car Color stock.

We reject this argument. To hold that a sale of 100% of the stock in a corporation by its parent to another is exempt from registration as an "isolated, non-issuer transaction" would, we think, be completely contrary to the remedial purposes of the Act. The General Assembly has adopted the doctrine of caveat venditor for sellers of securities, and it was not the intent of the Act to allow sophisticated sellers of securities to unfairly benefit from such sales without fully complying with the Act's requirements. See Graham v. Kane, 576 S.W.2d at 713. Accordingly, we hold that Section 14(b)(1) does not operate to exempt these transactions from registration.

### Cole's "Insider" Status

■ PPG's third argument is that Cole is not entitled to rescission because he was an insider and controlling person who is not entitled to relief under the Act. This argument is based on language in Graham v.

Kane, supra, and Schultz v. Rector-Phillips-Morse, Inc., 261 Ark. 769, 552 S.W.2d 4 (1977), that laches, estoppel and waiver may be applied to actions such as the present action for rescission. While we agree that such defenses, if proved, are generally available in actions for rescission, we observe in the case at bar that these defenses have not been proved.

The district court found as a fact that Cole was unsophisticated in the business dealings giving rise to the creation of Car Color, and that he worked primarily as a salesman during the first one and one-half years of Car Color's corporate existence, notwithstanding his title as Vice President and General Manager of Car Color.[9] The district court also found that Cole was unaware at the time he exercised his option that Car Color's corporate charter had been revoked, and we observe that Car Color's operations deteriorated markedly soon after Cole's wife ceased helping to run the business. These findings are not clearly erroneous, and also provide a strong indication that Cole lacked both the sophistication and the inside information that could operate to bar relief to him. See Graham v. Kane, 576 S.W.2d at 713, and the cases cited therein. Because we are unable to say that the district court's conclusion that the parties were not in pari delicto is incorrect as a matter of law, we hold that the equitable defenses against rescission are not available against Cole.

### Sale of the Entire Business

PPG has cited two recent decisions of the Seventh Circuit which hold that where a stock sale is merely a mechanism whereby the commercial purchase and sale of an entire business is effected, the securities laws are not applicable. See Canfield v. Rapp & Son, Inc., 654 F.2d 459, 462–65 (7th Cir. 1981); Frederiksen v. Poloway, 637 F.2d 1147, 1152–54 (7th Cir.), cert. denied, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981). PPG, however, has failed to cite

---

9. The sophistication of the investor appears to have been of particular importance to those courts considering the applicability of equitable defenses to rescission under the Act. See Lane v. Midwest Bancshares Corp., 337 F.Supp. 1200, 1211 (E.D.Ark.1972); Graham v. Kane, 576 S.W.2d at 713; Schultz v. Rector-Phillips-Morse, Inc., 552 S.W.2d at 13–14.

any Arkansas cases so holding, and we have discovered no such cases.

In the absence of any authority from the State of Arkansas in support of this proposition, we are not prepared to depart from the traditional and accepted meaning of the terms "stock" and "securities."

> [I]f the applicability of the [Act] depended in all cases solely on the economic realities of a transaction, an investor might be unjustifiably misled by the use of a particular label and form to believe his purchase protected by the securities law. Consequently, ... when the existence of a covered security is in issue, the name given to an instrument cannot be disregarded, and may, in fact, be highly relevant, especially if the instrument possesses some of the intrinsic features customarily associated with it.

*Bronstein v. Bronstein*, 407 F.Supp. 925, 928 (E.D.Penn.1976). *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 850–51, 95 S.Ct. 2051, 2059–60, 44 L.Ed.2d 621 (1975); *Mifflin Energy Sources, Inc. v. Brooks*, 501 F.Supp. 334, 336 (W.D.Penn. 1980).[10]

■ In sum, we agree with the district court that the transactions involved herein involved the sale and purchase of securities under the terms of the Arkansas Securities Act. In addition, because we find that the Car Color stock was not exempt from registration, and because we find that Cole was not subject to any equitable defenses as a result of his dealings with Car Color, we agree with the district court that Cole is entitled to rescission under the provisions of the Act. *See* Ark.Stat.Ann. § 67–1256(a).

## II. COLE'S CROSS–APPEAL

Cole has raised two issues in his cross-appeal. First, he contends that the district court was in error when it concluded that PPG was entitled to judgment in the amount of $10,000.00 on its counterclaim. Second, Cole contends that the district court erred in failing to find that PPG committed securities fraud in the transactions entitling him to rescission.

■ With regard to the judgment on the counterclaim, Cole asserts that he was required to execute the personal guaranty on Car Color's open account purchases because of his purchase of the Car Color stock. According to this argument, because the stock sale was illegal, it must follow that there was no consideration to Cole for his personal guaranty, and the guaranty is therefore unenforceable.

This argument overlooks the recital in the guaranty that it was given "[i]n consideration of the sale and/or delivery by PPG ... of certain products manufactured and/or distributed by PPG to Car Color...." In addition, there is evidence in the record that substantial open account purchases were, in fact, made by Car Color after Cole had purchased its stock. We find that there was adequate consideration to support the guaranty, and that it is therefore enforceable.

■ With regard to Cole's contention that the district court erred in failing to find securities fraud on PPG's part, it is sufficient to note that Cole was found to

---

**10.** In *Forman*, the issue was whether shares of stock in a state-subsidized cooperative apartment were securities within the purview of the federal securities laws. The Supreme Court applied an economic realities test and found that the shares were not securities within the purview of the acts. The Court went on to state, however, that the name given to an instrument is not wholly irrelevant.

> There may be occasions when the use of a traditional name such as "stocks" or "bonds" will lead a purchaser justifiably to assume that the federal securities laws apply. This would clearly be the case when the underlying transaction embodies some of the signifi-

cant characteristics typically associated with the named instrument.

421 U.S. at 850–51, 95 S.Ct. 2051 at 2059–60.
In addition, *Mifflin* is almost squarely contrary to PPG's position on this issue.

> In this case, the substance of the sale is 100% of stock in a business. This is clearly evidenced by the terms of the stock purchase agreement. Ownership of the business is a by-product of this transaction, but is not sufficient to remove what is clearly expressed in the terms of the purchase and sale of stock from the purview of the federal securities laws.

501 F.Supp. at 336.

have been the moving party when he exercised the option, and that he did so against the advice of his accountant and even certain of PPG's employees. These findings are not clearly erroneous. Cole has thus failed to demonstrate that he purchased the securities "by means of" any material misstatements on PPG's part. *See* Ark.Stat. Ann. § 67–1256(i).[11]

The judgment of the district court is affirmed.

---

11. There is nothing inconsistent in our holding that Cole is not entitled to rescission by reason of any material misstatements made by PPG, and our holding that he is nevertheless entitled to rescission by reason of PPG's failure to register the securities. *Graham v. Kane* made it clear that failure to register the securities is an adequate ground for rescission notwithstanding the absence of fraud, misrepresentations or scienter on the seller's part. 576 S.W.2d at 713–14.