_____

No. 95-2560

_____

Thomas E. Robertson, Jr., As      *
Trustee of the Farmer's Co-op      *
of Arkansas and Oklahoma, Inc.,    *
& as Rep. of a class of members    *
depositors, and equity security    *
holders, who are similarly         *
situated to him trust Farmer's     *
Co-op of Arkansas and Oklahoma,    *
Inc.,                              *
                                   *
          Plaintiff,               *
                                   *   Appeal from the United States
Bob Reves, *                       District Court for the
                                   *   Western District of Arkansas.
          Appellee,                *
                                   *
Elwood B. Courtney, Sr.; Carl      *
Greuel; Jack Shackleford,          *
                                   *
          Plaintiffs,              *
                                   *
Robert H. Gibbs, in his own        *
right & as the natural guardian    *
of two minor children, Robert H.*
Gibbs, Jr., Thomas A. Gibbs,       *
                                   *
          Appellee,                *
                                   *
Thomas H. Hester; Susanne A.       *
Hester, in her own right; Joe S.*
Hester, Executor of the Estate     *
of J.G. Hester; Lee P. Bennett;    *
Viola A. Bennett, in her own       *
right; Merle Walker; Adalene       *
Walker, in her own right;          *
Rosetta Dickinson, in her own      *
right; Herbert Chisum,             *
                                   *
          Plaintiffs,              *
                                   *
Frances Graham, in her own         *
right,                             *
                                   *
          Appellee,                *
                                   *

George Wasson; Paula Jarrett,            *
                                         *
          Plaintiffs,                    *
                                         *
     v.                                  *
                                         *
Jack E. White; J.E.W., Inc.;             *
Valley Feeds, Inc.; Citizens             *
Bank & Trust, Company of Van             *
Buren, Arkansas; Gene                    *
Kuykendall, doing business as            *
Kuykendall & Kuykendall; Fred            *
Kuykendall, doing business as            *
Kuykendall & Kuykendall; Oran            *
Moody, Jr., doing business as            *
Moody & Moody, Individually;             *
Michael O. Moody, doing business*
as Moody & Moody, individually,          *
                                         *
          Defendants,                    *
                                         *
Arthur Young & Co., now Ernst &          *
Young LLP, *
                                         *
          Appellant,                     *
                                         *
Hal Brewer; Waldo Price; Truman          *
O. Boatright; J.O. McClure;              *
Hugh Winfrey, Jr.; L.M. Creech;          *
Charles Bane; E.H. Pritchett;            *
Robert Plunkett; Ralph McClure;          *
Jimmy Don Gooch; Jerry Metzger;          *
W.J. Rimmer; Ball, Mourton &             *
Adams; E.J. Ball; Kenneth R.             *
Mourton; Stephen E. Adams,               *
                                         *
          Defendants.                    *

                      _____

          Submitted:  December 13, 1995

             Filed:  April 12, 1996
                      _____

Before MAGILL, BRIGHT, and MURPHY, Circuit Judges.

                      _____


MAGILL, Circuit Judge.




                      -2-

This appeal concerns the degree to which a defendant is entitled to damages offsets in the calculation of rescissory damages offsets.

In 1986, following a trial in federal district court, a jury found that the accounting firm of Arthur Young had committed securities fraud in connection with the sale of notes issued by Farmer's Co-operative of Arkansas and Oklahoma, Inc. (Co-op). After appeals stretching over several years, the district court awarded the plaintiff class of Co-op noteholders (Class) $5.4 million in rescissory damages.

Arthur Young appeals the award of damages, arguing that the district court overstated the damages because of two erroneous legal conclusions. First, the court increased the damages by the amount that the Class would refund to several settling defendants pursuant to a Mary Carter agreement.[1] Second, the court failed to reduce the class damages by the amount of interim bankruptcy distributions. Based on the principles of rescissory damages, we affirm in part and reverse in part, and remand to the district court with instructions.

**I.**

Organized in 1946, the Farmer's Co-operative of Arkansas and Oklahoma, Inc., for most of its existence, operated as a

---

[1]Mary Carter agreements are settlement agreements where the exact amount of the settlement is not fixed. Rather, the ultimate value of the settlement depends on the amount plaintiff recovers from other defendants, either through settlement or court-awarded damages. See generally Lisa Bernstein and Daniel Klerman, An Economic Analysis of Mary Carter Settlement Agreements, 83 Geo. L.J. 2215 (1995). Some definitions of Mary Carter agreements further require that the settling defendant remain a party to the suit. See, e.g., Hoops v. Watermelon City Trucking, Inc., 846 F.2d 637, 639-40 & n. 2-3 (10th Cir. 1988); In re Mosher, 25 F.3d 397, 402 (6th Cir. 1994).

traditional farmers' cooperative.  For a nominal fee, any farmer in the area could become a member, entitled to one share and one vote.  To raise money to finance its operating expenses, the Co-op issued uncollateralized and uninsured promissory notes that offered payment upon demand and a higher interest rate than other local investment institutions.

On February 23, 1984, the Co-op filed for bankruptcy to protect itself from a run on demand notes triggered by its inability to pay on those obligations.  The Co-op asserted that three factors caused the bankruptcy: (1) ineffective management, (2) demand notes used as the primary source of financing, and (3) financial problems of a gasohol[2] plant it owned.  As a consequence of the bankruptcy filing, the demand notes were frozen in the bankruptcy estate and were no longer redeemable at will.  Relying on Arkansas and federal law, the purchasers of Co-op demand notes brought a class action securities fraud suit in the United States District Court for the Western District of Arkansas against the Co-op's directors and officers, Arthur Young, and several others.

Prior to trial, the Class arrived at a settlement with the Co-op's directors and officers.  According to the settlement terms, International Insurance Company (International), on behalf of the directors and officers, agreed to make an initial payment of $5.6 million to the Class.  The agreement also contained a "sliding scale" provision, requiring the Class to repay International an amount equal to one-half of the Class's recoveries from nonsettling defendants.  Ultimately, the Class settled with every defendant but Arthur Young.

Following a trial in late 1986, a jury found that Arthur Young had committed fraud against purchasers of notes between

---

[2]Gasohol is a fuel consisting of 90% gasoline and 10% ethyl alcohol.

February 15, 1980, and the bankruptcy date by issuing misleading audit reports in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and § 67-1256 of the Arkansas Securities Act, Ark. Stat. Ann. § 67-1256 (recodified at Ark. Code Ann. § 23-42-106 (1987)). In audits performed for fiscal years 1981 and 1982, Arthur Young[3] misrepresented the value of a gasohol plant owned by the Co-op, creating the impression that the Co-op had a positive net worth when, in fact, the net worth was negative.

A lengthy series of appeals followed.[4] During the course of these

---

[3]In 1981, the Co-op hired Russell Brown and Company, at that time the largest accounting firm in Arkansas, to perform a company audit. However, on January 2, 1982, Russell Brown merged with Arthur Young and Company. Therefore, the 1981 audit was performed under the Russell Brown name while the 1982 audit was performed under the Arthur Young name. Later, in 1989, Arthur Young merged with Ernst & Whinney to form Ernst & Young.

[4]Arthur Young appealed the district court's denial of its motion for judgment n.o.v. We reversed the district court decision, believing that the demand notes did not constitute a security for purposes of either the federal or Arkansas security acts. Arthur Young & Co. v. Reves, 856 F.2d 52 (8th Cir. 1988).

The Supreme Court granted certiorari, vacated our decision, and remanded. It held that the demand notes constituted securities within the meaning of §3(a)(10) of the Securities Exchange Act of 1934. Reves v. Ernst & Young, 494 U.S. 56 (1990).

On remand from the Supreme Court, we affirmed the judgment of the district court in all respects except the damage award, which we reversed and remanded for a new trial to determine damages. Arthur Young & Co. v. Reves, 937 F.2d 1310 (8th Cir. 1991).

Prior to the new trial, the Class sought Supreme Court review on the question of whether summary judgment in favor of Arthur Young on the claim that it had acted in violation of RICO was proper. The Supreme Court granted certiorari and affirmed our holding that Arthur Young did not contravene RICO under the theory propounded by the Class. Reves v. Ernst & Young, 507 U.S. 170 (1993).

appeals, the bankruptcy trustee made five distributions to the noteholders. In September 1987, the trustee paid noteholders

the proceeds of the Co-op's settlement with its directors and officers. The trustee made an additional four distributions to Co-op noteholders as well as other creditors between December 1988 and January 1990 with the proceeds from the periodic sales of Co-op's assets. The trustee made the later payments on an interim basis, subject to adjustments in the future to ensure that the final distribution is fair to all the creditors.[5]

On November 14, 1994, the case returned to the district court to retry the issue of damages. Before the court were questions about the specific mechanics for calculating damages. The court found Arthur Young liable for $5,446,073.38 to the Class. Crucial to reaching this figure was the court's conclusion that the damage figure should be adjusted upward to account for the rebate provision in the settlement agreement and that the interim bankruptcy distributions to shareholders did not entitle Arthur Young to a damages offset.

At the damages trial, it was undisputed that Arthur Young is entitled to a damages offset for the settlement proceeds. The amount of that offset, however, was contested. Because of the settlement agreement's sliding scale rebate provision, the value of the settlement varies depending on whether it is measured before or after the rebate to International. The court held that the value of the settlement must be measured after the rebate and, therefore, the amount of damages to be paid by Arthur Young must be adjusted upward to account for the effect of the sliding scale reimbursement clause. Following traditional notions of rescissory damages and the fact that "the Eighth Circuit emphasized that defendant is to receive an offset for <u>settlement proceeds</u> and <u>settlements received</u>," Mem. Op. at 12, the court stated that the settlement

---

[5]A full description of the background to this litigation is set forth in <u>Arthur Young & Co. v. Reves</u>, 937 F.2d 1310 (8th Cir. 1991).

offset must be measured after the operation of the sliding scale provision. The upward adjustment should be in an amount such that the Class will be made whole after paying fifty percent of their recovery to International.

The parties also contested whether Arthur Young should receive a damages offset for the bankruptcy distributions. The district court held that an offset would contravene the Eighth Circuit's directions on damages. According to the district court, the Eighth Circuit opinion, <u>Arthur Young v. Reves</u>, 937 F.2d 1310 (8th Cir. 1991) (referred to as <u>Reves II</u>), "simply does not expressly instruct this court to provide a bankruptcy distribution offset." Mem. Op. at 13. In addition, the court noted that such an offset might violate the collateral source rule.

Arthur Young challenges the district court's damage calculation, arguing that the court erred (1) in basing the settlement offset on the settlement's post-rebate value, and (2) in denying an offset for bankruptcy distributions received by the Class.

## II.

In an earlier appeal of this case, this Court held that rescissory damages best suited the harm suffered by the Class. <u>Reves</u>, 937 F.2d at 1336. Rescissory damages serve to place the Class in the same position they would have been in but for Arthur Young's fraud. <u>Id.</u> at 1337.

Recognizing that rescissory principles underlie the resolution of questions concerning damage calculations, this opinion considers the two arguments asserted by Arthur Young in turn.

**A.**

Arthur Young and the Class agree that Arthur Young is entitled to an offset for the amount received by the Class as settlement. The disagreement between the parties lies in the calculation of the amount of the offset. The district court, interpreting Reves II, held that Arthur Young should be allowed an offset only for that part of the initial Mary Carter agreement that the Class retains after rebating fifty percent to International.

Arthur Young offers three grounds for reversing the district court's decision. First, it argues that the district court deviated from the mandate in Reves II. Second, it claims that the Class procedurally defaulted on the claim by failing to raise it in earlier appeals. Third, Arthur Young asserts that the district court cannot increase the judgment against it based on the provisions of other settlement agreements. These arguments are not compelling.

We issued no mandate in our Reves II opinion regarding a specific amount of offset for the directors and officers' settlement. We stated that the district court should "credit Arthur Young with the settlement proceeds allocated to the post-April 22, 1982, demand note purchasers." Reves, 937 F.2d at 1338. Arthur Young assumes that the phrase "settlement proceeds" necessarily refers to the entire amount of the settlement paid to the Class, without deduction for the Class's obligation to refund fifty percent of any award to International. Appellant's Br. at 26. Arthur Young errs in this assumption.

When referring to standard settlements, the phrase "settlement proceeds" has a clear and unchanging meaning. With a Mary Carter agreement, however, the amount of the proceeds could arguably be one of two figures: it could be the final apportionment after judgment or it could be the initial payment. In our Reves II

opinion, we did not reach the issue of how "settlement proceeds" should be defined in this context.

Rather, we stated that the damage award must "place the Class in the same position that it would have been in if not for Arthur Young's fraudulent acts." Reves, 937 F.2d at 1338. The offset for the settlement proceeds should result in no unjust enrichment for the Class and no undeserved benefit for Arthur Young. In order to achieve these results, the district court properly adjusted the damages upward to insure that the damages awarded made the Class whole. To do otherwise would ensure that the Class is undercompensated by the amount of the settlement rebate.

Arthur Young is also mistaken in claiming that the Class had previously defaulted on this issue. The Class questioned the manner in which the district court applied the sliding scale to the settlement credits in its first appeal. Arthur Young acknowledges this, but, relying on Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208 (8th Cir. 1993), believes that the single sentence argument on the rebate issue is inadequate to maintain the claim.[6]

Arthur Young's argument misses the point: until this appeal, how the settlement offset should be calculated remained an open issue. In earlier appeals the Class never conceded that the offset for settlement proceeds should be based on the initial settlement payment - in fact it argued exactly the opposite, albeit in a single sentence. In Reves II we remanded the case to the district court for a new trial on damages. Reves, 937 F.2d at 1338. We therefore conclude that the question of how to calculate the settlement offset was properly within the purview of the district

---

[6]In Primary Care Investors, we held that a "cursory and summary statement" that failed to provide any "hint as to the nature of the asserted error" could result in a waiver of a claim on subsequent appeal. Primary Care Investors, 986 F.2d at 1212.

-10-

court and is properly before us on appeal.

Finally, Arthur Young argues that the court cannot make its liability contingent on the Class's settlement with other defendants. According to Arthur Young, the settlement operated like insurance for the Class, offering the benefit of a guaranteed multi-million dollar recovery, but the drawback that any future recovery would be shared with International. Because it had no voice in defining the terms of the settlement, Arthur Young feels that its liability should not be affected by it.

This argument misses the mark. Arthur Young is jointly and severally liable, with the other defendants, for the injuries suffered by the Class. See TBG, Inc. v. Bendis, 36 F.3d 916, 929-30 (10th Cir. 1994) (White, J., concurring). The Class cannot obtain double recovery from both Arthur Young and the settling defendants, and therefore Arthur Young's liability to the Class must be offset by the final amount received from the settlement. The provisional Mary Carter agreement of $5.6 million, however, is not final. It is subject to reduction, because fifty percent of the Class's recovery in court must be refunded to International. Allowing Arthur Young to rely on the provisional amount for its offset would effectively reduce the Class's recovery and the total liability of all the defendants. This we cannot do.

**B.**

The district court also held that Arthur Young was not entitled to an offset for the five distributions made by the bankruptcy trustee to the Class. Reaching this conclusion based on our opinion in Reves II, the court stated that "the Eighth Circuit opinion simply does not expressly instruct this court to provide a bankruptcy distribution offset in any portion of the opinion." Mem. Op. at 13. We disagree. To be consistent with the principle that rescissory damages "contemplate a return of the injured party

-11-

to the position he occupied before he was induced by wrongful conduct to enter into the transaction," Arthur Young must be allowed an offset for these distributions. Reves, 937 F.2d at 1335 n. 34.

When we held that rescissory damages were the proper remedy, we explicitly acknowledged that this form of remedy would allow Arthur Young to be treated as noteholders, entitled to distributions by the bankruptcy trustee, once final judgment was entered. As this Court stated, "we do believe that rescissory damages are fair to both parties: the Class receives funds immediately, and Arthur Young has an opportunity to recoup from the Co-op's bankruptcy estate the damages it paid to the Class." Reves, 937 F.2d at 1336.

Although saying that Arthur Young steps into the position of the bondholders once final judgment is entered does not necessarily mean that it is also entitled to an offset for bankruptcy distribution made to the Class prior to final judgment, there is only a small gap in reasoning between the first proposition and the second. Garnatz v. Stifel, 559 F.2d 1357 (8th Cir. 1977), cert. denied, 435 U.S. 951 (1978), bridges this gap. There we stated that rescissory damages "seek[] to return the parties to the status quo ante the sale. In effect, the plaintiff is refunded his purchase price, reduced by any value received as a result of the fraudulent transaction." Id. at 1361.

The implication of Garnatz for this case is clear. The Class has received some value as a result of buying the Co-op notes: they received a partial return of their principal through bankruptcy distributions.[7] To the degree that the Class recovers

---

[7]Had the Co-op voluntarily decided to cease business and sold its assets to raise funds to repay creditors, there would be no question but that the noteholders were receiving a return on their investment. The same is true of the bankruptcy distributions.

its principal, its injuries are necessarily reduced.  Under the theory of damages adopted by the Court on prior appeals, Arthur Young is required to pay a judgment only to the degree necessary to reestablish the status quo before the fraud-induced note purchase.

The Class makes three arguments for disallowing Arthur Young an offset for the bankruptcy distributions.  First, it asserts that prior court decisions in this matter preclude an offset for bankruptcy distributions.  This interpretation of Reves II puts form over substance.  While it is true that the opinion made no express mention of an offset for bankruptcy distribution, this is of no consequence.  We were clear in our intent--Arthur Young should receive the benefit of bankruptcy distributions.  If a final judgment had been quickly reached, then distributions would have gone directly to Arthur Young.  Since this case has dragged on and distributions have been made, however, the benefit must come to Arthur Young through an offset in the judgment instead.

Second, the Class asserts that Randall v. Loftsgaarden, 478 U.S. 647 (1986), disallows an offset for the bankruptcy distributions.  With respect to §10(b) of the Securities Exchange Act, Loftsgaarden holds that the Act aims not only to compensate defrauded investors, but also to deter fraud and manipulative practices and encourage full disclosure of material information.  Id. at 664.  Consequently, rescission is not the sole measure of damages available in § 10(b) actions.  In instances where the application of rescissory damages result in a undeserved windfall remaining with the defendant, it is proper to use the defendant's profits as the measure of damages.  Id. at 663.  This alternative measure of damages may cause the plaintiff to receive more than necessary to make him whole for the economic loss caused by the defendant's fraud.

Loftsgaarden does not require this Court to deny Arthur Young an offset for the bankruptcy distribution.  See id.  Rather, it

allows the court, within the bounds of § 28(a) of the Securities Exchange Act, to award the § 10(b) plaintiff more than is necessary to effect restitution in certain circumstances. This case does not present such a circumstance. The application of a rescission theory of damages does not result in a windfall or unjust enrichment to Arthur Young. Rather, Arthur Young will likely have a million dollar judgment to pay even with the offset. It cannot be said that Arthur Young will have less incentive to comply with § 10(b) and the other securities laws after this case is resolved.

Finally, the Class turns to Arkansas law, asserting that its collateral source rule bars Arthur Young from receiving any credit for the distributions. The Class cites several cases describing the operation of the rule. Traditionally, under this rule, if an injured person receives compensation for his injuries from a source wholly independent of the tort-feasor, the payment should not be deducted from the damages which he would otherwise collect from the tort-feasor. See, e.g., Green Forest Pub. Sch. v. Herrington, 696 S.W.2d 714, 718 (Ark. 1985).

Arkansas law has extended the application of the collateral source rule beyond the sphere of common law tort. See Bell v. Estate of Bell, 885 S.W.2d 877, 881 (Ark. 1994). The Class, however, has cited no case applying the rule to securities laws in particular. Assuming, however, that the rule can be applied to securities fraud actions, it does not apply to the bankruptcy distributions at issue. Here, the Class accrues a benefit because they are creditors of a bankrupt business. The source of the benefit is in no way collateral to the fraud action. Indeed, the Class received the partial return of principal directly due to their ownership of the notes at issue.

**III.**

We affirm the district court in part, holding that Arthur

-14-

Young is entitled to an offset equaling the final value of the Class's Mary Carter agreement with International.  We also reverse the district court in part, holding that Arthur Young is entitled to an offset equaling the value of bankruptcy distributions received by the Class.  We leave to the court's discretion whether interest is due on this bankruptcy distribution offset.

The district court should direct the parties to submit revised damage calculations in light of this decision.[8]  The reports should rely on the same benchmark dates and clearly indicate what, if any, interest rate is applied in each time period.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[8]The resolution of the two legal questions leaves unanswered what the actual damages award to the Class should be.  Arriving at a quantitative measure of damages is difficult.  The expert analyses provided by the parties arrive at significantly different damage figures.  In addition, the numbers are difficult to compare because the experts chose different benchmarks from which to measure damages.  Matters are further confused by the district court's unexplained damage figure of $5,446,073.38.