REVES, et al.

v.

ERNST & YOUNG.

Civil No. 85–2044.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Sept. 9, 1996.

John McCambridge, Grippo & Elden, Chicago, IL, Jay Hoffman, Sugar, Friedling & Felsenthal, Chicago, IL, Robert R. Cloar, Cloar & Kincannon, Fort Smith, AR, for Plaintiffs.

Bruce M. Cormier, Ernst & Young, New York City, Bill Putman, Michal Mashburn, Mashburn & Taylor, Fayetteville, AR, for Defendant.

### *MEMORANDUM OPINION*

H. FRANKLIN WATERS, Chief Judge.

This case is currently before the court for revised damage calculations in light of the most recent opinion of the Court of Appeals for the Eighth Circuit. *Robertson v. White,* 81 F.3d 752 (8th Cir.1996). In one form or another this case has been pending before this or higher courts since 1985. A full description of the background of this litigation can be found in *Arthur Young & Co. v.*

*Reves*, 937 F.2d 1310 (8th Cir.1991) and will not be repeated herein.[1]

### Discussion.

The most recent appeal to the Eighth Circuit dealt solely with damages issues and the extent to which the defendant was entitled to "damages offsets in the calculation of rescissory damages offsets." *Robertson*, 81 F.3d at 754. This court's opinion with respect to the settlement offset was affirmed. However, the Eighth Circuit reversed with respect to this court's determination that defendant was not entitled to an offset for bankruptcy distributions. Specifically, the Eighth Circuit held that "Arthur Young is entitled to an offset equaling the value of bankruptcy distributions received by the Class." *Id.* at 758. The Eighth Circuit left it to this court's discretion "whether interest is due on this bankruptcy distribution offset." *Id.*

The court initially gave the parties time to attempt to reach an agreed damages figure. In other words, the parties were given time to settle this dispute and end this lengthy litigation. Unfortunately, the parties were unable to reach any type of agreement and in fact appear to be even farther apart in the manner in which they calculate the damages than the parties were prior to the last appeal. Undoubtedly any decision of this court will once again begin the appeal process. Nevertheless, the court has now received the revised damage calculations of both parties and is prepared to rule.

According to the plaintiffs' most recent damage calculations defendant's payment as of August 1, 1996, is $5,993,448. According to defendant, its payment is zero. In fact, defendant now contends for the first time that the plaintiff class has been more than fully compensated because the present value of the credits exceeds the present value of the Class' damages. Surprisingly, the defendant does not ask for a refund from the plaintiff class. *Defendant's June 19, 1996, brief* at 3.

After the court received the initial set of briefs from the parties, we requested supplemental briefing on the methods used by the experts to calculate the settlement offset. In its supplemental report, defendant indicates plaintiffs are entitled to a payment of $69,185 if the provisional settlement distribution amount is used and a payment of $45,574 if the net settlement distribution amount is used.

The Class begins with a damage figure of $9,413,284 as of August 1, 1996. Defendant's expert initially began with a different damage figure. However, this is because he utilized the damage figure submitted by the class' expert as of April 30, 1995, rather than bringing the figure forward to the present time. In defendant's reply brief and supplemental brief it adopts the $9,413,284 figure.

From a review of the parties submissions, it is apparent that the differences in their current damage calculations result from different approaches taken to four separate aspects of the damage calculation. First, the parties disagree on the method of calculating the settlement proceeds offset. Second, the parties disagree on whether Ernst & Young is entitled to an interest deduction on the settlement proceeds offset. Third, the parties disagree on the method to be used to calculate the amount of the bankruptcy distribution offset. Fourth, the parties disagree on whether Ernst & Young is entitled to an interest deduction on the bankruptcy distribution offset. Once these four issues are resolved, the parties will be able to calculate a current damage figure.

In making these determinations, the court is guided by traditional notions of rescissory damages. "Rescissory damages serve to place the Class in the same position they would have been in but for Arthur Young's fraud." *Robertson*, 81 F.3d at 756. "Rescissory damages are measured as fol-

---

1. In order of decision, the following cases deal with the various issues raised in this case: *Arthur Young & Co. v. Reves*, 856 F.2d 52 (8th Cir.1988); *Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990); *Arthur Young & Co. v. Reves*, 937 F.2d 1310 (8th Cir.1991); *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Robertson v. White*, 81 F.3d 752 (8th Cir.1996). This court has also rendered numerous opinions both published and unpublished in this case since it first began. Citation to these cases will not be furnished in this opinion.

lows: '[T]he plaintiff is entitled to a return of the consideration paid, reduced by . . . any "income received" on the security.' " *Arthur Young & Co. v. Reves,* 937 F.2d 1310, 1336–37 (8th Cir.1991), *quoting, Randall v. Loftsgaarden,* 478 U.S. 647, 656, 106 S.Ct. 3143, 3149, 92 L.Ed.2d 525 (1986).

The damages are designed to "place a plaintiff in the same position she would have been in had she not been induced to enter into the transaction. Therefore, all the Class is entitled to is the return of its investment in the Co-op, not the investment plus its interest." *Arthur Young,* 937 F.2d at 1337. "In effect, the plaintiff is refunded his purchase price, reduced by any value received as a result of the fraudulent transaction." *Robertson,* 81 F.3d at 757, *quoting, Garnatz v. Stifel,* 559 F.2d 1357, 1361 (8th Cir.1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801 (1978). Thus, to the extent the class receives a partial return of their principal either through settlement proceeds or bankruptcy distributions "its injuries are necessarily reduced." *Robertson,* 81 F.3d at 758. Additionally, the Eighth Circuit held that an award of both pre-judgment and post-judgment interest was appropriate "to compensate the Class for its investment and the interest the investment would have earned if not for Arthur Young's fraud." *Arthur Young,* 937 F.2d at 1338 (citation omitted). Keeping these principles in mind, we turn to an examination of the parties' arguments.

### 1. Calculation of the Settlement Offset.

■ The settlement agreement (Mary Carter agreement) between the Class and International Insurance Company (International), required International to make an initial payment of $5.6 million to the Class. The agreement contained a "sliding scale" provision, requiring the Class to repay International an amount equal to one-half of the Class's recoveries from nonsettling defendants. We previously held that defendant was entitled to an offset only for that part of the initial Mary Carter agreement that the Class retains after rebating fifty percent to International.

The Eighth Circuit affirmed this holding on appeal finding that we correctly "adjusted the damages upward to insure that the damages awarded made the Class whole." *Robertson,* 81 F.3d at 756. Defendant contended that the "settlement operated like insurance for the Class, offering the benefit of a guaranteed multi-million dollar recovery, but the drawback that any future recovery would be shared with International." *Robertson,* 81 F.3d at 757. In defendant's view, its liability should not be affected by the agreement because it had no voice in defining the terms of the settlement. *Id.*

The Eighth Circuit rejected this argument stating:

> This argument misses the mark. Arthur Young is jointly and severally liable, with the other defendants, for the injuries suffered by the Class. . . . The Class cannot obtain double recovery from both Arthur Young and the settling defendants, and therefore Arthur Young's liability to the Class must be offset by the **final amount** received from the settlement. The provisional Mary Carter agreement of $5.6 million, however, **is not final.** It is subject to reduction, because fifty percent of the Class's recovery in court must be refunded to International. **Allowing Arthur Young to rely on the provisional amount for its offset would effectively reduce the Class's recovery and the total liability of all the defendants.** This we cannot do.

*Robertson,* 81 F.3d at 757 (citation omitted) (emphasis added).

Both parties agree that the total proceeds from settlement from International and other defendants were $5,744,800. From this point on, the experts for both sides disagree entirely on the way the settlement offset is to be calculated. Defendant's expert calculates the settlement offset based on a pro rata allotment of the amount of the provisional settlement agreement. His calculations result in a settlement offset before consideration of the rebate provision of $3,802,615. In contrast, plaintiffs calculate the offset based on the final amount of the settlement—that is, the settlement proceeds after the rebate to International is taken into con-

sideration. Plaintiffs calculations result in a settlement offset of $1,853,391.[2]

In the court's view, the defendant in its calculations is doing exactly what the Eighth Circuit said defendant could not do. Defendant is using the provisional amount of the settlement to effectively reduce the Class's recovery. By using the provisional amount of $5.7 million to reduce the Class's recovery before taking into consideration the rebate provision, defendant effectively reduces the Class' damages to either zero or a very small monetary amount. This results in defendant receiving a much larger settlement credit than it would receive if the offset is determined by reference to the final amount received from the settlement as dictated by the Eighth Circuit.

In contrast, plaintiffs' expert has attempted through the application of various algebraic equations to follow the dictates of the Eighth Circuit. We believe the approach advocated by the plaintiffs is the one that most closely tracks the literal language of the Eighth Circuit. Therefore, the calculation of the settlement offset credit will be made in the manner advocated by the plaintiffs.

### 2. Interest on the Settlement Offset.

█ In their submission of damages calculations prior to the last appeal to the Eighth Circuit, both sides gave defendant credit for interest on the settlement proceeds offset. The Class now argues that was incorrect and takes the position that the Eighth Circuit did not give this court any discretion to award interest on that settlement offset. In plaintiffs' view, "[t]he Eighth Court's decision that the settlement offset not bear interest is confirmed by its holding that the $5.6 million provisional settlement amount that International paid in 1986 is the amount that must be reduced by the repayment in order to determine the final value of the settlement offset." *Plaintiffs' June 20, 1996, brief* at 11. Thus, plaintiffs state they were mistaken in April of 1995 when they incorporated in their calculations a credit constituting interest on the settlement offset.

Defendant argues that this issue was settled when both parties deducted or gave defendant credit for interest on the settlement proceeds prior to the last appeal. As this was not an issue raised on appeal, defendant argues the class has defaulted or waived this argument. Defendant also points out that the Class' position on interest on the settlement offset dates back to September of 1994 when the deposition of the plaintiff's expert was taken. Additionally, defendant notes that each of the four prior written reports submitted by the plaintiff's expert applied interest to the settlement offset. In any event, defendant argues that since the Class was held to be entitled to prejudgment interest, it is only fair that it be entitled to interest on its settlement credit to reflect the fact that the settlement proceeds were made available to the class members in 1986.

The court agrees with the defendant. The shift in plaintiff's position is not supported by any reasoned analysis; nor is the shift in position compelled by the language of Eighth Circuit's most recent opinion. This issue was settled when the court adopted the plaintiff's method prior to the last appeal. Neither party raised this issue on appeal.

█ In the case of *Little Earth of United Tribes v. Dept. of Housing,* 807 F.2d 1433 (8th Cir.1986) the court summarized the law of the case doctrine. The court noted

[l]aw of the case is a doctrine of discretion, not a command to the courts. The doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." The doctrine prevents the relitigation of settled issues in a case, thus protection the settled expectations of parties, ensuring uniformity of decisions, and promoting judicial efficiency. Accordingly, we will reconsider a previously decided issue only if substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice.

*Id.* at 1440–41.

█ We believe this doctrine bars the plaintiffs from relitigating the issue of defen-

---

**2.** However, the plaintiffs' calculation will change given the court's rulings, *infra,* on the issue of

interest credit for the settlement offset and the bankruptcy distribution offset.

dant's entitlement to a interest deduction on the settlement proceeds offset. Aside from the application of this doctrine, we believe the plaintiffs have waived this issue by failing to raise it during the last appeal to the Eighth Circuit. We certainly do not believe the Eighth Circuit's most recent opinion compels the court to change the position previously adopted on this issue.

### 3. Calculation of the Bankruptcy Offset.

■ The relevant damage period is referred to interchangeably as Period II or the AY Period. According to prior rulings, the AY Class is entitled to recover its investment of principal on demand notes purchased between April 22, 1982—when defendant first failed to disclose material facts—and February 23, 1984, when the Co-op finally declared bankruptcy. Excluded from this calculation are any demand notes that were redeemed prior to the bankruptcy. The method of calculating the overall damages to the AY Class is not at issue and has been settled by prior rulings of the court.

In the most recent appeal, the Eighth Circuit held that "Arthur Young is entitled to an offset equaling the value of bankruptcy distributions received by the Class." *Robertson*, 81 F.3d at 759. The bankruptcy trustee made a total of five distributions to noteholders. In September 1987, the trustee paid noteholders the proceeds of the Co-op's settlement with its directors and officers. An additional four distributions were made between December 1988 and January 1990 with the proceeds from the sales of the Co-op's assets. These distributions constitute a partial return of the class' principal. *Robertson*, 81 F.3d at 758 & n. 7.

Currently at issue is the correct method for calculating defendant's offset for the four distributions of the proceeds from sales of the Co-op's assets. These distributions were made to all noteholders without regard to when the noteholders made their investments.

The first issue then is what portion of the distributions is to be allocated to the AY Period. The Eighth Circuit treated these distributions as a partial return of the class members principal. *Robertson*, 81 F.3d at 758.

In the Class' view, a partial return of investment principal received through the bankruptcy distributions should be treated in the same manner as a partial withdrawal of investment principal received directly from the Co-op before 1984—that is, using this court's first-in-first-out method (FIFO). Under this method, the Class calculates the bankruptcy distributions offset as $1,566,445. The Class reaches this figure by applying the distributions received by each noteholder on a FIFO basis to their previously calculated damages. The Class argues application of FIFO on an account by account basis allows the determination of the precise value of the distributions allocable to the damages that occurred during the AY Class Period.

Ernst & Young argues that the bankruptcy distributions should also be allocated on a pro rata basis to all noteholders and that it should then receive credit for that portion allocated to AY Class members. Utilizing this method, Ernst & Young contends that the AY Period class members received 48.74% of each of the four bankruptcy distributions. When this percentage is applied to the total amount of bankruptcy distributions, $3,937,497, Ernst & Young contends it is entitled to a credit of $1,919,148.

In our February 3, 1995, opinion we adopted with some modification plaintiffs' FIFO method of determining the amount of lost investment principal during the AY Period. However, as directed by the Eighth Circuit settlement proceeds are not to be allocated on a FIFO basis; rather settlement proceeds were allocated on a pro rata basis to all noteholders and then Arthur Young was credited with the settlement proceeds allocated to the AY Period class members. *Arthur Young*, 937 F.2d at 1338. The settlement proceeds represent amounts paid as damages rather than a return on investment.

The bankruptcy distributions were made based upon each noteholder's bankruptcy claim, which was equal to the noteholder's account balance on the date of bankruptcy. The Class argues that the account by account approach it utilized is more accurate and in

keeping with the court's adoption of the FIFO method in dealing with withdrawals of principal. The court agrees. As defendant points out with respect to its argument on prejudgment interest, "there is no basis for distinguishing between investments withdrawn from the Co-op before bankruptcy on the one hand, and bankruptcy distributions on the other." *Defendant's June 19, 1996, brief* at 10. Accordingly, the bankruptcy distributions offset will be calculated by utilizing the FIFO method.

### 4. Interest on the Bankruptcy Offset.

■ The class urges the court to deny defendant any additional credit consisting of interest on the bankruptcy distributions offset. It argues that defendant's strategy in this case has been to deny its liability and put off paying damages to the AY Class for as long as possible. It points out that defendant originated a fraud against the AY Class that violated both the United States and Arkansas securities fraud laws.

Defendant submits that if this court adheres to its prior determination to award prejudgment interest on the class' damages and interest on defendant's settlement credit, then it must be awarded prejudgment interest on the bankruptcy credit as well. To do otherwise, would in its view, ignore economic reality, unfairly penalize the defendant, and conflict with the prior rulings of this court on prejudgment interest.

The court agrees. As the court previously noted, the calculation of damages should as closely as possible reflect economic reality. The Class had the use of the bankruptcy distributions and defendant is entitled to an interest credit for the money paid to class members.

### Conclusion.

Having resolved the four disputed issues regarding the calculations of damages and the defendant's entitlement to interest credit, all that remains is for the parties to submit a recalculated figure. Once this figure is submitted, judgment in accordance therewith will be entered. A separate order in accordance herewith will be concurrently entered.