# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1751

_____

| | | |
|---|---|---|
| John Peacock, Norma Harvey, | * | |
| Mildred Sorrell, Jennifer Short, | * | |
| Jim Mattson, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas |
| | * | |
| 21st Century Wireless Group, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: November 12, 2001

Filed: April 12, 2002

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
SMITH,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

John Peacock, Norma Harvey, Mildred Sorrell, Jennifer Short, and Jim Mattson
(collectively referred to as appellants) appeal from a judgment entered in the United

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western
District of Missouri, sitting by designation.

States District Court[2] for the Eastern District of Arkansas following a trial. Although the district court allowed appellants to rescind their contract for the sale of securities with 21st Century Wireless Group, Inc. (hereinafter 21st Century or the company), the district court denied them relief under breach of contract and fraud claims. For reversal, appellants argue that the district court erred in dismissing a constructive fraud claim and in calculating rescissory damages and attorney's fees. We affirm.

**BACKGROUND**

On January 11, 1996, appellants and several others entered into a stock purchase agreement (hereinafter the agreement) with 21st Century. The agreement provided that 21st Century would buy 100% of the stock in Peacock's Radio & Wild's Computer Service, Inc. (hereinafter Peacock's Radio) for $800,000 to be paid in 21st Century stock to be issued on closing. Section 2.1 of the agreement provided that the number of 21st Century shares to be issued was to "be determined by using the closing bid price . . . for the stock on the first day it was listed on a national, regional or over-the-counter stock exchange." Section 6.2(e) of the agreement provided that, subject to appellants' discretion, at closing the 21st Century stock would "be listed on a national, regional or over-the-counter exchange." After the agreement, appellant Peacock, who had owned about 40% of the Peacock's Radio stock, became a member of 21st Century's board of directors and the company's vice-president for regulatory affairs. He also served as a representative of the other appellants in dealing with 21st Century. Although at the August 1996 closing, the 21st Century stock was not listed on an exchange, appellants, who owned collectively about 50 percent of the Peacock's Radio stock, exchanged their stock for the 21st Century stock. In addition to not being listed on a public exchange, the 21st Century stock was not registered or exempt from

---

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

registration, as required by Arkansas securities law.  <u>See</u> Ark. Code Ann. § 23-42-504.[3]

In June 1997, Peacock and Harvey agreed to waive the provision in section 2.1 of the agreement providing that the stock would be priced as of the first day of public trading in exchange for receiving additional shares of 21st Century stock.[4]  Peacock, who had received about 63,000 shares in 1996, received an additional 63,000 shares of 21st Century common stock, which also were not registered.  On December 31, 1997, the State of Arkansas revoked the corporate status of Peacock's Radio and its operations were consolidated into the operations of 21st Century.

In February 1999, appellants filed the instant action against 21st Century, seeking rescission of the agreement or alternatively damages.  In an amended complaint, they asserted that 21st Century had violated Arkansas securities law by failing to register the stock and had breached the agreement and committed fraud by failing to have the stock listed on a public exchange.  21st Century moved for partial summary judgment on the three claims.  21st Century did not dispute that the sale of the unregistered stock violated Ark. Code Ann. § 23-42-504.  However, it argued that the remedy for the statutory violation was prescribed by Ark. Code Ann. § 23-42-106(a)(1), which provides that the buyer of an unregistered security may recover from the seller "the consideration paid for the security, together with interest at six percent (6%) per year . . . , costs, and reasonable attorney fees, less the amount of any income received on the security, upon tender of the security, or for damages if [the buyer] no longer owns the security."  Because appellants still held the 21st Century stock, the company argued that their remedy was limited to rescission and

---

[3]The stock was exempt from registration under the federal securities law.

[4]The district court stated that it only had record evidence of Peacock's waiver, but believed that all appellants had executed waivers.  Our review of the record indicates that, as 21st Century represents, Harvey also signed a waiver.

that the "consideration paid" was their pro rata portion of the $800,000 purchase price. Appellants opposed the motion, arguing that they were entitled either to the return of their Peacock's Radio stock or to the profits 21st Century earned on the stock.

The district court granted 21st Century's motion in part and denied it in part. The district court agreed with 21st Century that the remedy for the statutory violation was prescribed by Ark. Code Ann. § 23-42-106(a)(1) and that, upon tender of the 21st Century stock, appellants would receive their pro rata portion of the $800,000 purchase price, plus interest, costs, and attorney's fees, less any income received. The district court denied the motion as to the breach of contract and fraud claims.

At trial, which began before a jury, appellants' counsel spent much time examining witnesses concerning the fact that the 21st Century stock was not registered. The district court questioned counsel about the relevancy of the testimony in light of its grant of summary judgment on the statutory rescission claim arising from the lack of registration. Counsel told the district court that the statutory violation was not relevant to either the breach of contract or fraud claims. When counsel continued with the line of questioning, the district court again questioned the relevancy of the testimony. Counsel again assured the district court that the breach of contract and fraud claims were based on alleged promises to take the 21st Century stock public, not on the failure to register the stock.

Concerning the alleged promise to go public, Peacock and Harvey testified that trading on a public exchange was an important inducement to their entering into the stock purchase agreement. Although they believed that if the 21st Century stock had been traded publicly, it would have increased in value, they admitted its value might have declined. Rodney Hutt, who was 21st Century's executive vice-president and executed the agreement on the company's behalf, testified that the company had every

intention of going public, but, despite spending a lot of time, money, and effort, it could not do so.

At the close of the evidence, 21st Century moved for judgment as a matter of law. Appellants' counsel told the district court that "there [wa]s no point to submit the issues of fraud, common law or statutory fraud to the jury" and that the jury could be released because all that remained to be decided were equitable remedies. The district court asked counsel, "So you're moving to dismiss your remaining fraud claims?" Appellants counsel responded, "Yeah, both of them." After the district court stated it would dismiss the fraud claims with prejudice, counsel stated "that's what I thought I was asking." The district court then dismissed the jury.

In January 2001, the district court issued an order disposing of the remaining claims. The district court held that 21st Century had not breached the agreement by failing to list the stock on a public exchange. As to the fraud claims, the district court noted that, although appellants had voluntarily dismissed the claims with prejudice, they raised a constructive fraud claim in their post-trial brief. The district court went on to hold that, even if the constructive fraud claim had not been dismissed, it was without merit. The district court found that any representations 21st Century had made about going public could not, under Arkansas law, serve as a basis for a fraud claim because they related to future events and were made in good faith. See Delta Sch. of Commerce, Inc. v. Wood, 766 S.W.2d 424, 426 (Ark. 1989).

As to the statutory rescission claim, the district court held that, upon tender of the 21st Century shares appellants had received, both in 1996 and 1997, they would receive $281,027.05 to be distributed on a pro rata basis according to their ownership of the stock. The district court's calculation of the rescissory damages was based on the total value of the original block of the 21st Century stock ($800,000), less a $55,000 advance made by 21st Century before closing, multiplied by appellants'

percentage of the 21st Century stock,[5] plus 6% interest from the closing date of August 21, 1996, until the entry of the order, and less a $144,179 cash distribution.

Appellants filed motions for new trial or reconsideration and for attorney's fees and costs. The district court denied the motion for new trial or reconsideration. As to the statutory damages, the district court rejected appellants' argument that they were entitled to a separate rescissory measure of damages in return for the tender of stock received in 1997, finding that the 1997 transaction was "part and parcel of the overall effort to ensure that [appellants] received the full value of the agreed upon purchase price for their shares of $800,000." Add. at 2. As to the fraud and breach of contract claims based on alleged promises to take 21st Century public, the district court noted that even if it were inclined to fashion an equitable rescission remedy on the claims, it could not do so because there was a failure of proof of damages. As to attorneys fees and costs, the district court held that appellants could not recover fees and costs associated with their unsuccessful breach of contract and fraud claims and awarded them fees and costs of $3,305.25 associated with the statutory violation claim. This appeal followed.

Jurisdiction in the district court was proper under 28 U.S.C. § 1332. Jurisdiction in this court is proper under 28 U.S.C. § 1291.

**DISCUSSION**

We first address appellants' argument that the district court erred in dismissing their constructive fraud claim. 21st Century argues that appellants have waived review of the claim because they dismissed it with prejudice at trial. Appellants contend that they dismissed only their claim for a legal remedy based on fraud, not

---

[5]The district court took into account that under a stock repurchase plan that three appellants had tendered back some of their 21st Century stock.

for an equitable rescission based on fraud. In an attempt to side-step the statutory measure of rescissory damages under Ark. Code Ann. § 23-42-106(a), appellants assert that an equitable rescission based on fraud would require disgorgement of any profits 21st Century made on the Peacock's Radio stock.

Although we believe that appellants waived their fraud claims, because the district court rejected the constructive fraud claim on the merits, we will address the issue. The district court did not err in holding that, as a matter of law, appellants' constructive fraud claim was without merit. As the district court noted, "the tort of constructive fraud requires that material representations of fact be made." South County, Inc. v. First Western Loan Co., 871 S.W.2d 325, 327 (Ark. 1994). Generally, under Arkansas law, "an action for fraud or deceit may not be predicated on representations relating solely to future events.'" Morrison v. Back Yard Burgers, Inc., 91 F.3d 1184, 1188 (8th Cir. 1996) (quoting Delta Sch. Of Commerce., 766 S.W. 2d at 427). "However, the general rule is inapplicable if the person making the representation or prediction knows it to be false at the time it is made." Delta School of Commerce, 766 S.W. 2d at 427. In this case, there was ample evidence to support the district court's finding that 21st Century's representations about going public were made in good faith. Indeed, in their brief, appellants concede that 21st Century's actions indicated its intent to go public. Brief for Appellants at 33.

In their brief, appellants attempt to construct a fraud claim based on the fact that the 21st Century stock was not registered. Their attempt must fail. At trial, appellants' counsel repeatedly assured the district court that their theory of fraud was based on representations about going public, not on the failure to register. Counsel told the district court that the failure to register the stock was not an element of either the fraud or breach of contract claims. Indeed, counsel conceded that "[t]he fact [the stock] wasn't registered, frankly, I'm afraid I can't make it . . . to the jury" on the claim. The concession was not surprising in light of evidence indicating that

Peacock, who was a member of the 21st Century board of directors and its vice-president, knew about the registration problem.

We also agree with the district court that 21st Century did not breach the stock purchase agreement. There is no dispute that the agreement provided that, at appellants' discretion, they could waive conditions of closing, including the condition that, as provided in Section 2.1, the 21st Century stock would be listed on an exchange. There is also no dispute that at the August 1996 closing, appellants exchanged their shares of Peacock's Radio stock for the unlisted 21st Century stock. Moreover, the agreement provided that it could not be amended or modified except by written agreement. Thus, any oral representations could not modify the agreement. In any event, as the district court held, there was a failure of proof concerning any damages appellants may have sustained because the stock was not listed on a public exchange. Both Peacock and Harvey testified that if the stock had been listed, its value may have declined. Indeed, Peacock admitted that the stock of another company that had sought to acquire Peacock's Radio stock in a "stock-swap" had declined in market value from $6.00 a share to 17 cents.

We next address appellants' arguments that the district court erred in calculating damages under Ark. Code Ann. § 23-42-106(a)(1). As previously indicated, as relevant here, the statute provides that a buyer of an unregistered security can recover from the seller "the consideration paid for the security, together with interest at six percent . . . , costs, reasonable attorney fees, less the amount of income received on the security, upon tender of the security." Appellants do not dispute that "[t]his language sets forth a rescissory calculation designed to restore the plaintiff to the position he held before he entered into the wrongful transaction." Farley v. Henson, 11 F.3d 827, 837 (8th Cir. 1993) (applying Arkansas law); see also Robertson v. White, 81 F.3d 752, 757 (8th Cir. 1996) (Robertson) ("rescissory damages contemplate a return of the injured party to the position he occupied before

he was induced by the wrongful conduct to enter into the transaction") (internal quotation omitted).

Appellants assert that to restore them to the position they occupied before executing the 1996 agreement, the district court should have ordered 21st Century to return their Peacock's Radio stock. If 21st Century still held the stock, their argument could have had merit. See Wigand v. Flo-Tek, Inc, 609 F.2d 1028, 1036 (2d Cir. 1980) ("If the consideration is not money but property that is intact at the time of judgment, then the district court can . . . avoid valuation problems by ordering return of the consideration per se."). However, as the district court held, the only record evidence was that the Peacock's Radio stock no longer existed, and thus 21st Century could not return it.

Appellants next argue that the district court erred in holding that the "consideration paid" was their pro rata portion of the $800,000 purchase price set forth in the agreement, asserting they are entitled to any profits 21st Century made on the Peacock's Radio stock. In cases of fraud under the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), this court has stated "where the application of rescissory damages result in an undeserved windfall remaining with the defendant, it is proper to use the defendant's profits as the measure of damages." Robertson, 81 F.3d at 758. "This alternative standard aims at preventing the unjust enrichment of a fraudulent buyer." Randall v. Loftsgaarden, 478 U.S. 647, 663 (1986). However, as the district court held, this case involves unregistered securities, not fraud. The Arkansas Supreme Court has "made it clear that failure to register . . . securities is an adequate ground for rescission notwithstanding the absence of fraud, misrepresentations or scienter on the seller's part." Cole v. PPG Indus., Inc., 680 F.2d 549, 557 n.11 (8th Cir. 1982) (citing Graham v. Kane, 576 S.W.2d 711, 713 (Ark. 1979)).

Appellants' reliance on Wigand v. Flo-Tek, Inc., 609 F.2d at 1036, is misplaced. In that case, the court noted that "where . . . the consideration plaintiff

gave defendant in exchange for the stock was uncertain in value at the time of the transaction . . ., the court must set a value upon it." Id. However, here, as the district court held, the value of the consideration paid at the time of the transaction was not uncertain. Rather, it was set forth in the stock purchase agreement at $800,000.

Nor did the district court err in rejecting appellants' argument that they were entitled to an additional rescissory measure of damages for the 21st Century shares they received in June 1997. Although they argue that the transaction "had nothing to do with the purchase price paid by [21st Century] for [appellants'] stock," Brief for Appellants at 29, the district court found otherwise, relying on Hutt's testimony that the transaction was part of "an overall effort to ensure that appellants receive full value of the agreed upon price for their shares of $800,000." Add. at 2. Nor could appellants receive rescissory damages and also retain the shares they received in 1997. See Ambassador Hotel Co. v. Wei-Chuan Inv., 189 F.3d 1017, 1031 (9th Cir. 1999) (holding that to allow plaintiffs to " receive the full purchase price of the stock and also retain the stock itself" would violate "the principle of rescission"). As 21st Century notes, the tender upon a securities rescission must result in a complete rescission. See Louis Loss, Securities Regulation, § 11(B)(8), n. 118 (3ed. 1992). In other words, rescissory damages seek "to return [both] parties to the status quo [before] the sale." Robertson, 81 F.3d at 757.

Last, appellants challenge the district court's award of attorney's fees under Ark. Code Ann. § 23-42-106(a)(1), which provides for reasonable attorney's fees and costs to a prevailing plaintiff in a failure to register case. The district court found that only 15% of appellants' counsel's time was related to the failure to register claim and that most of the trial preparation and the entire trial were related to appellants' unsuccessful claims. The district court was in "the best position to determine whether hours were reasonably expended" in pursuit of the successful claim, and we have no basis to substitute our judgment for that of the district court. Collins v. Burg, 169 F.3d 563, 565 (8th Cir. 1999). Although appellants invite this court to review their

lawyers' time records, we cannot do so.  In their fee motion, appellants admitted that "[n]either of [their] lawyers kept time records."

Accordingly, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.